George W. Schneck, Howard M. Kuehner and The Pennsylvania Federation of Sportsmen's Clubs, Inc., Appellants *v.* City of Philadelphia, et al., Appellees.

Argued October 5, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*John F. X. Fenerty,* with him *Charleston & Fenerty,* for appellant.

*Paul Rucci,* Special Assistant to the City Solicitor, with him *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE BLATT, February 27, 1978:

George W. Schneck, Howard M. Kuehner and the Pennsylvania Federation of Sportsmen's Clubs, Inc. (Appellants) appeal the order of the Court of Common Pleas of Philadelphia County which dismissed their complaint below and denied them a permanent injunction of the enforcement of Philadelphia's gun ordinance.[1]

The Appellants were unable to purchase firearms in Philadelphia (City) because, although they proffered compliance with the Uniform Firearms Act[2] (Act), they refused to comply with the application and license requirements of Ordinance 10-814 (Philadelphia Code §814) which regulates the acquisition and transfer of firearms in that City. They brought a class action to enjoin the City and its duly elected and appointed officials and officers from continued enforcement of the ordinance, and they argue that the regulation of firearms is a matter of statewide concern governed by state legislation so that the Philadelphia ordinance regulating firearms is consequently invalid and unenforceable.

The Philadelphia ordinance provides that "no person shall acquire or transfer any firearm in the City . . . [nor] outside of the City, which is brought into the City, unless application has been made to, and license obtained from, the Department [of Licenses and Inspections]." This application must include the applicant's name, address, occupation, photograph,

---

[1] This ordinance (prior to its 1973 amendments) had previously been held unconstitutional in that it attempted to extend authority beyond city limits and enlarged powers granted by acts of the General Assembly. *Commonwealth v. Ray*, 218 Pa. Superior Ct. 72, 272 A.2d 275 (1970), *vacated on other grounds*, 448 Pa. 307, 292 A.2d 410 (1972).

[2] Act of December 6, 1972, P.L. 1482, *as amended*, 18 P.S. §6101 et seq.

fingerprints, a description of the firearm and a statement indicating the date, place, nature and disposition of any criminal proceeding brought against the applicant for any offense other than traffic violations. The ordinance further provides that no license shall be issued unless the Police Department, after due investigation, approves the application, that no one may give, transfer, sell or deliver possession of any firearm to any person unless the required license is supplied, and that a fine of not more than $300.00 and/or imprisonment of not more than ninety days may be imposed for violation of the ordinance.

The Appellants argue that the ordinance is attempting to regulate the "lawful ownership, possession or transportation of firearms" and is therefore preempted by state legislation which provides for the comprehensive regulation of the sale, licensing, transfer and delivery of firearms throughout the state. The Act includes detailed provisions regarding the application for and issuance of licenses, specifically providing in Section 6120 in pertinent part:

§6120. *Limitation on Municipal Regulation of Firearms*

(a) General rule. No county, municipality or township may in any manner regulate the lawful ownership, possession or transportation of firearms when carried or transported for purposes not prohibited by the laws of this commonwealth.

*Added by* Section 2 of the Act of October 18, 1974, P.L. 768, 18 P.S. §6120.

The City of Philadelphia, as a municipal corporation created by the state, possesses only the powers specifically granted to it by the legislature. *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 207 A.2d 864 (1965). Furthermore,

the Philadelphia Home Rule Charter,[3] Section 18 of the First Class City Home Rule, 53 P.S. §13133, provides:

Notwithstanding the grant of powers contained in the act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by all of the General Assembly which are—

(b) Applicable in every part of the Commonwealth

(c) Applicable to all the cities of the Commonwealth (footnote omitted).

In addition, it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinances to the contrary are unenforceable. *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971); *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966); *Department of Licenses and Inspections v. Weber,* 394 Pa. 466, 147 A.2d 326 (1959); *Girard Trust Co. v. Philadelphia,* 336 Pa. 433, 9 A.2d 883 (1939); *City of Erie v. Northwestern Pennsylvania Food Council,* 14 Pa. Commonwealth Ct. 355, 322 A.2d 407 (1974).

In light of the specific language of the statute here concerned, we are not convinced by the lower court's opinion or by the City's argument that a review of the legislative history of Section 6120 of the Act requires the conclusion that it was the legislature's specific intent *not* to invalidate Philadelphia's ordinance. It is a rule of statutory construction that, when the words of a statute are clear, the letter is not to be disregarded under the pretext of pursuing its spirit. Sec-

---

[3] Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §13101 et seq.

tion 1922 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922. *See Pennsylvania Labor Relations Board v. Teamsters Union Local No. 77*, 20 Pa. Commonwealth Ct. 410, 342 A.2d 158 (1975); *Paxon Maymar, Inc. v. Pennsylvania Liquor Control Board*, 11 Pa. Commonwealth Ct. 136, 312 A.2d 115 (1973).

We believe that this statute clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms, and we also believe that Philadelphia's ordinance attempts to regulate firearms in the manner indicated in the statute as prohibited. We must, therefore, enjoin the City of Philadelphia and its officers from enforcing Ordinance 10-814 and reverse the order of the court below.

## ORDER

AND Now, this 27th day of February, 1978, it is hereby ordered that the City of Philadelphia and its officers named herein as Appellees are enjoined from enforcing Ordinance 10-814 regulating the acquisition and transfer of firearms.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:
I must respectfully dissent.

I am not convinced the words of Section 6120 of the Act, 18 P.S. §6120, are clear and free from ambiguity nor that they reflect accurately the true intent of the legislature. The legislative history of House Bill No. 861 clearly demonstrates that the legislature intended only to limit the operation of Ordinance 10-814 (Philadelphia Code §814). Total preemption was neither contemplated nor intended.

Judge TAKIFF thoroughly reviews in his authored discussion the legislative history of House Bill No. 861 and I incorporate that discussion in this dissent.

102

"Discussion

"On close examination the seeming broad sweep of the State Act does not so encompass the field of gun control as to lead inexorably to the conclusion of total preemption by the Commonwealth, to the exclusion of all local ordinance and regulation. Thus, the very title of the Act is that of a 'limitation' on regulation; not an elimination or abolition thereof. . . . [T]he local regulatory conduct which was proscribed was explicitly addressed to 'the *lawful* ownership, possession or transportation of firearms' (emphasis added) which prompts two queries: a) Does this modification reserve to a political subdivision the power to regulate the 'unlawful' ownership, possession or transportation of firearms? If so, by what standard of 'lawful' or 'unlawful' is the reserved power to be exercised? b) Is the prohibition of regulation of the specified 'lawful *ownership, possession* or *transportation*' so inconsistent with '*Acquisition* or *Transfer* of *Firearms*', which is the title and the subject of licensing and regulation under Philadelphia Code 10-814, as to bar the ongoing viability of *both* legislative enactments in dealing with a subject of broad concern and apprehension in contemporary society?

"Finally, the prohibition against regulation of firearms 'when carried or transported for purposes not prohibited by the laws of this Commonwealth,' prompts sundry questions, the answers to which are not so obvious from a reading of the statute that understanding may be found within the four corners of the legislative enactment. Thus, one ruminates, may a municipality continue to regulate 'lawful ownership, possession or transportation of firearms' when owned, possessed or transported for an *unlawful* or prohibited purpose, such as the commission or intended commission of a felony, but not so when carried for a purpose not prohibited by the laws of the Commonwealth,

such as gaming in season? If so, at what stage of the conduct or purpose, sanctioned or prohibited by law, does the illusive power in a municipality to regulate appear or disappear? In an even broader inquiry, is the declared 'limitation' on the power of a municipality to regulate 'lawful ownership, possession or transportation of firearms' confined, as defendants assert, to certain statutorily enumerated events only, i.e., 'when carried or transported for purposes not prohibited by the laws of this Commonwealth.' Or, as asserted by plaintiffs, has the total field of the regulation of firearms been preempted by the Commonwealth so that this clause, which invites a more limited intention, is to be modified by interpretation?

"Prompted by these queries springing from the language of the statute, we address the fundamentals of the rules of statutory construction and the legislative record of statutory birth.

"The Construction of Statutes is itself the subject of statutory expression: 1 Pa. C.S.A. Subchapter B, §1921, et seq. The fundamental directive of these Rules of Construction is enunciated as follows:

'§1921    Legislative Intent Controls.

(a)    The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b)    When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c)    When the words of the statute are not explicit, the intention of the General Assembly

may be ascertained by considering, among other matters:

    (1)   The occasion and necessity for the statute.

    (2)   The circumstances under which it was enacted.

    (3)   The mischief to be remedied.

    (4)   The object to be attained.

    (5)   The former law, if any, including other statutes upon the same or similar subjects.

    (6)   The consequences of a particular interpretation.

    (7)   The contemporaneous legislative history.

    (8)   Legislative and administrative interpretations of such statute.'

"See Leach v. Phila. Saving Fund Soc., et al., 234 Pa. Sup. 486, at 490 (1975).

"Added to these guidelines, included among many additional rules of statutory construction, is the all pervasive 'presumption' particularly relevant to the understanding of this statute, the history of which we shall examine, §1922(5) 'That the General Assembly intends to favor the public interest as against any private interest': See Corn v. Grassmeyer, 237 Pa. Sup. 473 at 476 (1975).

"Seeking to ascertain and effectuate the intention of the General Assembly, we have reviewed the history of 18 P.S. 6120(a).

"The first draft of the Bill, H.R. 861 of 1973, Printers #1012, introduced April 25, 1973, was unequivocal. *Except* in cities of the first class, it was the declared intention of the General Assembly to occupy

'the whole field of regulation of the *transfer*, ownership, possession and transportation of firearms to the exclusion of all existing and future municipal or township ordinances or regulations relating thereto. Any such existing ordinances are hereby declared null and void.

'Cities of the first class may not in any manner regulate the lawful ownership, possession or transportation of firearms by hunters in transit.' (Emphasis added). . . .

"Several observations are appropriate. *Exclusive* of cities of the first class, the enunciated preemption by the Commonwealth encompassed 'transfer' of firearms as well as ownership, possession and transportation. As to cities of the first class, however, no restriction of any nature was imposed on its power to regulate *transfer*; the only declared restriction on the power of such bodies to regulate firearms was with respect to the 'lawful ownership, possession or transportation of firearms' by a specified class, to wit, 'hunters in transit'.

"The amendment to this draft, reported from the Committee on Local Government, House of Representatives June 25, 1973, (Printers #1444), retained the identical language quoted, modifying only the definition of 'firearms' to exclude air rifles. . . . In this form, the Bill was considered in the House on second reading, agreed to and ordered to be transcribed on September 17, 1973 for third reading (Legislative Journal-House, p. 1974). . . . The Bill was placed on the final passage postponed calendar on March 5, 1974 (Legislative Journal-House, p. 3780 . . . , still containing the language above quoted (Printers #1444). On April 2, 1974, the House resumed third consideration at which time it was amended so as to expand the limitation on the power of cities of the first class to regulate 'law-

ful ownership, possession or transportation of firearms by *hunters in transit*' into the broader class of 'persons licensed to hunt or fish in this Commonwealth if such persons are actually hunting or fishing or are going to the places where they desire to hunt or fish or returning from such places.' The sponsor of the amendment, who was one of the original sponsors of the Bill, explained that the purpose of the amendment was 'to spell out more specifically what a hunter is' and that the definition was taken from the Crimes Code: Legislative Journal-House, April 2, 1974, pages 4106-07. . . . As so amended, now bearing Printers #2858 but in all other respects identical to the original Bill insofar as the declared intention of preempting the entire field, but excluding therefrom cities of the first class, in the manner above set forth, the Bill was passed by the House on April 16, 1974 (Legislative Journal-House, pages 4160-61) and ordered presented to the Senate for concurrence. . . .

"In the record presented before us, H.B. 861, next appears as Printers #3446 as reported by the Senate Committee on Local Government on June 25, 1974. It contained a single amendment; the deletion of the word 'transfer' from the House approved declaration of occupying the whole field of regulations. In all other respects the Bill as passed by the House was intact, including the exception as to cities of the first class and the restriction on such cities to regulate ownership, possession or transportation of firearms by persons licensed to hunt or fish. Legislative Journal-Senate p. 2049. . . . No legislative debate or other explanation for the deletion of the single word has been brought to the attention of the Court. As so amended, the Bill, Printers #3446 . . . was agreed to in the Senate on second consideration. (Legislative Journal-Senate, p. 2149). On July 10, 1974, the Bill was passed over in its order without objection: Legisla-

tive Journal-Senate, p. 2162. . . . Thereafter it was again passed over, this time over objection, on July 12, 1974: Legislative Journal-Senate, pages 2215-16. On this occasion the reason declared for recommittal was 'purely to correct some glaring deficiencies in the Bill', at p. 2216.

"The Bill was re-reported as amended the same day, bearing Printers #3590. . . . In this version, the Title, which on all previous versions in both the House and the Senate had identified it as *'repealing certain municipal or township ordinances or regulations with reference to firearms'* (emphasis added), now deleted the word 'certain'. No exception or variation of any kind was specified as to cities of the first class, and no reference is made to the regulation of 'transfer' of firearms. Most significantly, it was at this point in its historical journey that the declaration by the General Assembly 'that it is occupying the whole field of regulation . . .' was totally deleted, never to reappear. The text stated:

'§6120   Limitations on Legislation.

(A)   General Rule—no municipality or township may in any manner regulate the lawful ownership, possession or transportation of firearms by persons licensed to hunt or fish in this Commonwealth, if such persons are actually hunting or fishing or are going to the places where they desire to hunt or fish or returning from such places.'

"The Bill as so amended, now identified as Printers #3612 . . . on Third Consideration (Legislative Journal-Senate, p. 2279) was further amended on September 10, 1974 by

1)   Change of title from *'repealing* certain municipal or township ordinances or regulations

with reference to firearms' to *'limiting* the regulation of firearms by counties, municipalities or townships'. (Emphasis added)

2)   Deletion of the explicit reference to licensed hunters and fishermen if so engaged, or going to or from such activity, and substitution of the broader category of 'firearms when carried or transported for purposes not prohibited by the Laws of this Commonwealth.'

3)   Modification of the definition of Firearms by excluding specific reference to guns authorized for hunting.

"The September 10, 1974 draft, containing the revised Title above quoted, passed that body and returned for concurrence of the House (Printers #3646), . . . is in the form finally adopted, supra.

"H.B. 861, as so amended, was concurred in by the House . . . after extensive debate on October 2, 1974: Legislative Journal-House, pages 6084-6088, 6110-6112.   In the course of that debate, as well as during earlier colloquies in the General Assembly, what is patently clear is that those to whom the Bill was of primary interest and concern (The Occasion and Necessity for the Statute: Rules of Construction §1921 (c)(1) supra) were sportsmen and sportsmen's organizations concerned with the problems incident to the transportation of firearms through the city on their way to and from hunting or sports activity (Legislative Journal-House, p. 6112).   Those who questioned or opposed it were concerned with the very real problems of crimes of violence involving firearms, the proliferation of killings in the large metropolitan communities, and the impediment thereto which is hoped to be effected by the licensing restrictions and procedures contained in the Philadelphia Ordinance which bar the acquisition of firearms by persons (1) under

the age of 18, or (2) convicted of crimes of violence or violation of the Firearms Act, or (3) convicted of selling, using or possessing narcotics, or (4) habitual drunkard (§10-814(4)). In the course of that debate, the principal sponsor of the Bill expressed the opinion that in the Bill's final form, the local ordinance would not 'be affected in any way, shape or form'. (Legislative Journal-House, at 6087). While we do not agree with the then expressed reasons for that conclusion, this unconditional declaration is certainly a clear manifestation of legislative intent. Similarly, while we appreciate the grave concerns by the members of the House who then sought to have the bill recommitted, through non-concurrence in the Senate Amendment, in order to effectuate a reconciliation of the concerns properly addressed to the public interest and the welfare of residents of Philadelphia (and Pittsburgh) with the private interests of sportsmen, perhaps in the haste of a closing session, those opposing legislators apparently failed to scrutinze the history of the Bill or the precise words incorporated into the final draft. (Footnote omitted.)

"Judicial function in the construction of statutes is specified with particularity in the statutorily mandated Rules of Construction, 1 Pa. C.S.A., supra. As was pointedly observed in Commonwealth v. Pope, 455 Pa. 384, at 388, 317 A.2d 887, 889 (1974) 'A court may not alter, under the guise of "construction", the express language and intent of the Legislature.' The evolving developmental history of this legislation and the express language used, compels the conclusion that the Philadelphia Ordinance, at least insofar as matters pertaining to licensing, the acquisition, or transfer of firearms in Philadelphia is concerned, which are the only matters presently before us, is viable and remains in full force and effect. The prayer for injunctive relief must be denied." (Emphasis in original.)