740 A.2d 193

**MARS EMERGENCY MEDICAL SERVICES, INC., Appellant,**

v.

**TOWNSHIP OF ADAMS and Borough of Callery, Appellees.**

Supreme Court of Pennsylvania.

Submitted Dec. 15, 1998.

Decided Oct. 28, 1999.

Michael J. Betts, Pittsburgh, for Mars Emergency Medical Services, Inc.

Stephen R. Wirth, Kathy Speaker MacNett, Harrisburg, for Ambulance Assoc. of PA.

James A. Taylor, Butler, for Township of Adams.

William D. Kemper, Butler, for Callery Borough.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION OF THE COURT*

CASTILLE, Justice.

Appellant presents this Court with the questions of whether a municipality may, consistent with the Emergency Medical Services Act (EMS Act)[1], the Second Class Township Code[2] and the Borough Code[3], designate a primary provider of emergency medical services for the municipality and whether the EMS Act preempts local legislation of emergency medical services. The Commonwealth Court below held that a municipality may designate a primary provider of emergency medical

1. 35 P.S. § 6921 *et seq.*
2. 53 P.S. § 65101 *et seq.*
3. 53 P.S. § 45101 *et seq.*

services and that the EMS Act does not preempt local legislation in this arena. We agree that the EMS Act does not preempt local legislation and that a municipality has authority under either the Second Class Township Code or the Borough Code to designate a primary provider. However, whether the designation is consistent with the purposes of the EMS Act requires factual findings not made by the trial court. Therefore, we affirm in part and remand in part for factual findings consistent with this opinion.

Appellant, Mars Emergency Medical Services, Inc. ("Mars") is a non-profit provider of emergency medical services licensed by the Department of Health pursuant to the EMS Act. Appellee Township of Adams is a second class township subject to the Second Class Township Code, and appellee Borough of Callery is a borough subject to the Borough Code. Pursuant to 28 Pa.Code § 1001.123(2), the Department of Health assigns "primary response areas" to emergency medical service providers. Appellant's Department of Health license lists appellees as appellant's "primary response area."

Prior to July of 1994, appellant Mars provided emergency medical services to appellees and their residents in response to 9-1-1 emergency calls. Around July of 1994, the supervisors of appellee Adams Township passed a resolution designating Quality Emergency Medical Services, Inc. ("Quality") as the township's primary provider of emergency medical services. Appellees are within Quality's "primary response area" as assigned by the Department of Health. On August 4, 1994, the council of appellee Borough of Callery passed a similar resolution designating Quality as the Borough's primary provider of emergency medical services. Since that time, appellees' 9-1-1 operators have dispatched Quality in response to the majority of calls, dispatching Mars only when a caller specifically requests Mars or when Quality is unable to respond.

On December 20, 1994, Mars filed a complaint in equity seeking injunctive relief and a declaration that appellees' designations of Quality as their primary provider of emergency medical services were void as violative of the EMS Act, the

Second Class Township Act and the Borough Code. Appellant then filed a motion for preliminary injunction seeking to enjoin the appellees from designating Quality. The trial court denied appellant's motion for preliminary injunction holding that appellees had the power to designate a primary provider under the EMS Act, the Second Class Township Code and/or the Borough Code.[4]

On August 30, 1996, at a pretrial conference on appellant's application for a permanent injunction, appellees each filed a motion for summary judgment. The trial court granted the summary judgment motions on April 11, 1997, and dismissed appellant's complaint finding that, as a matter of law, appellees had authority to designate a primary provider and that their designation of Quality was appropriate. Appellant appealed to the Commonwealth Court, and on January 7, 1998, the Commonwealth Court affirmed. On September 9, 1998, this Court granted allocatur to address the issues of whether appellees have authority to designate a primary provider of emergency medical services and if such authority was properly exercised in the instant case.

The threshold issue for our consideration is whether the EMS Act preempts local legislation in the area of emergency medical services. The law of preemption of local legislation by state statute is well-established in this Commonwealth. In *Western Pennsylvania Restaurant Ass'n v. Pittsburgh,* 366 Pa. 374, 380–81, 77 A.2d 616, 619–20 (1951), this Court set forth in detail the standard for preemption:

> There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand, there are statutes which expressly provide that municipal legislation in regard to the subject covered by the State act

4. Prior to the trial court's ruling, the parties agreed that the trial court would make the determination of this question of law in order to rule on the motion for preliminary injunction.

is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the State; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute: *Bussone v. Blatchford*, 164 Pa.Super. 545, 67 A.2d 587 [ (1949) ]. But, generally speaking "it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Natural Milk Producers Association v. City and County of San Francisco*, 20 Cal.2d 101, 109, 124 P.2d 25, 29 [ (1942) ]. (footnotes omitted).

More recently, in *Council of Middletown Township v. Benham*, 514 Pa. 176, 180–82, 523 A.2d 311, 313–14 (1987), this Court reiterated the standard set forth in *Western Pennsylvania Restaurant Ass'n* and discussed this Court's reluctance to find that local legislation is preempted by state statutes stating that this Court has found preemption in only three areas: alcoholic beverages, anthracite strip mining and banking. Preemption was found in the area of alcoholic beverages due to a clear legislative intent to exercise complete control over all aspects of liquor manufacture, sale and use.[5] Similarly, the

5. The Liquor Code states that the purpose of the code is to "prohibit the manufacture of and transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the board as herein specifically provided, and

legislature expressed a clear intent to preempt local legislation in the anthracite mining industry.[6] This Court held that the legislature intended to preempt the banking field because commercial necessity presents a special need for uniformity. *See City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980). Accordingly, absent a clear statement of legislative intent to preempt, state legislation will not generally preempt local legislation on the same issue.

The EMS Act is silent as to whether local governments may enact supplementary legislation in this area. Since there is no clear statement of legislative intent, we must look to the legislation itself to determine the legislative intent in regard to local legislation. Section 6922 of the EMS Act sets forth the intent of the act—"to establish and maintain an effective and efficient emergency medical services system which is accessible on a uniform basis to all Pennsylvania residents and to visitors to this Commonwealth." 35 P.S. § 6922(b)(1). In the same section of the act, the legislature expressed its intent that "the Secretary of Health, in developing a stratified system of trauma care, shall, whenever feasible, involve local citizens in the decisionmaking process." 35 P.S. § 6922(b)(3). This section indicates an intent that entities other than the state legislature and the Department of Health be involved in effectuating the purposes of the EMS Act. Thus, the wording of the legislation leads to the conclusion that the EMS Act, by involving local citizens in the decision making process, does not preempt local legislation concerning the provision of emergency medical services.

Having determined that the EMS Act does not preempt local legislation, we must now consider whether appellees have authority under the Second Class Township

every section and provision of the act shall be construed accordingly." 47 P.S. § 1–104.

**6.** The Anthracite Strip Mining and Conservation Act provides that "[a]ll coal stripping operations coming within the provisions of this act shall be within the exclusive jurisdiction of the department and shall be conducted in compliance with such reasonable rules and regulations as may be deemed necessary by the secretary." 52 P.S. § 681.20c.

Code and the Borough Code to designate a primary provider of emergency medical services. The board of supervisors of a second class township has general powers to adopt ordinances pursuant to 53 P.S. § 66601. The board has the specific authority to adopt ordinances to secure the safety of persons within the township. 53 P.S. § 66527. Finally, the Second Class Township Code authorizes the board of supervisors to "operate and maintain motor vehicles for the purposes of conveying persons to and from hospitals, and it may appropriate moneys toward ambulance and rescue and life saving services and make contracts relating thereto." 53 P.S. § 66528. These sections do not specifically authorize appellee to designate a primary provider of emergency medical services, but neither do the sections prohibit such a designation. Rather, the code provides appellee with broad powers to adopt ordinances in the interest of public safety. Designating a primary provider of emergency medical services ensures the safety of township residents by providing a single responsible entity to assure accountability and efficient and effective emergency medical services to the residents. Therefore, appellee has the authority under the Second Class Township Code to designate such a primary provider.

■ The Borough Code grants the borough council the authority "[t]o enact, revise, repeal and amend such bylaw, rules, regulations, ordinances and resolutions, not inconsistent with the laws of the Commonwealth, as it deems beneficial to the borough and to provide for the enforcement of same." 53 P.S. § 46006(3). Should it be determined that the designation of a primary provider of emergency medical services is consistent with the EMS Act, appellee Borough of Callery clearly has authority under the Borough Code to make such a designation.

■ The final determination for this Court, therefore, is whether the designation of Quality by appellees is consistent with the EMS Act. The stated purpose of the EMS Act is to provide effective and efficient emergency medical services on a uniform basis throughout the Commonwealth. 35 P.S.

§ 6922(b)(1). The trial court decided this case purely on the law of preemption and appellee's authority under the Second Class Township Code and the Borough Code. The trial court made no factual findings regarding the effect on the safety of the residents of the township and borough by the appellees' designation of Quality as the primary provider. In order to determine if appellees' designation is consistent with the EMS Act, one necessarily must consider whether the designation advances or thwarts the purposes of the act. For example, does the designation disturb the Department of Health's state-wide allocation of emergency medical services in that both appellant and Quality were assigned appellees as their primary response area? The factual basis from which such a determination can be made is absent in this case since no factual record was made in the trial court. Therefore, appellant must be given the opportunity to show, if it can, that appellees' designation of Quality as the primary provider of emergency services is inconsistent with the purposes of the EMS Act.

Accordingly, the decision of the Commonwealth Court is affirmed with respect to the question of preemption and appellees' authority under their respective codes to designate a primary provider of emergency medical services. However, this matter is remanded to the trial court for findings of fact regarding the effect of appellee's designation of Quality on the availability and provision of emergency medical services to township and borough residents and conclusions of law as to whether the designation is consistent with the EMS Act.

Justice ZAPPALA files a dissenting opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice FLAHERTY joins.

ZAPPALA, Justice, dissenting.

I agree with the majority that the EMS Act does not preempt local legislation concerning the provision of emergency medical services. I also agree that Adams Township and Callery Borough have authority under the Second Class Town-

ship Code and the Borough Code respectively to designate a primary provider. To my mind this is all that is necessary to dispose of this appeal. Accordingly, I would simply affirm the order of the Commonwealth Court.

I dissent from the majority's decision to remand to the common pleas court for findings of fact on the issue of "whether the designation of Quality by appellees is consistent with the EMS Act," Opinion at 196, because I do not believe that is a proper issue for the court to decide. The forum for that issue, if any, is the Department of Health, the agency charged with implementation and oversight of the EMS Act.

SAYLOR, Justice, dissenting.

I agree with the majority's conclusions that the EMS Act does not wholly preempt municipalities from selecting preferred primary emergency services providers,[1] that the absence of findings reconciling the local designation with the Act renders the disposition of Appellants' challenge defective, and that a remand is therefore appropriate. My difference with the majority's disposition concerns only the character of the remand, as I would remand with instructions to stay the action pending reference of the question of compatibility to the Department of Health pursuant to the doctrine of primary jurisdiction.

The doctrine of primary jurisdiction has evolved to enable courts to reconcile overlapping functions of judicial and administrative tribunals by referring aspects of pending litigation to the administrative agency charged with regulating the subject matter in dispute. *See generally Elkin v. Bell Telephone Co.*

1. I note, however, that my reasoning differs somewhat from the majority's, as I disagree with the emphasis which it places upon the General Assembly's directive to the Department of Health to involve local citizenry in the decisionmaking process. *See* 35 P.S. § 6922(b)(3). This provision speaks to the participation of citizens within the framework of the Department's own efforts to plan, guide and coordinate the statewide system of medical service delivery. In my view, it has little bearing upon the issue of whether the General Assembly wished to permit the citizenry (as well as local governmental entities) to make, or preclude them from making, their own independent decisions impacting upon the system.

*of Pa.,* 491 Pa. 123, 420 A.2d 371 (1980); *Ostrov v. I.F.T., Inc.,* 402 Pa.Super. 87, 586 A.2d 409 (1991); *E.L.G. Enterprises Corp. v. Gulf Oil Co.,* 291 Pa.Super. 414, 435 A.2d 1295 (1981). It permits the judiciary to make use of the agency's experience and expertise in specialized areas and promotes consistency and uniformity in areas involving administrative policy. *See generally Elkin,* 491 Pa. at 132, 420 A.2d at 376 (stating that "[t]he doctrine '... requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme'" (quoting *Weston v. Reading Co.,* 445 Pa. 182, 198–99, 282 A.2d 714, 723 (1971))).

The Department of Health is charged with the responsibility to plan, guide and coordinate the development of medical services into a unified statewide system, as well as to ensure such system's ongoing viability. *See* 35 P.S. §§ 6924–6925. In view of these statutory responsibilities, as well as the Department's specialization and experience, I believe that it is in a substantially superior position to the common pleas court to adjudge, in the first instance, the impact of the local designation of a preferred primary services provider upon the statewide system.

While the parties have not sought invocation of the doctrine of primary jurisdiction, since the doctrine functions to ensure proper distribution of power between judicial and administrative bodies (and not for the convenience of the parties), the common pleas court, as well as appellate courts, are vested with the authority to determine whether the doctrine applies *sua sponte. See generally Williams Pipe Line Co. v. Empire Gas Corp.,* 76 F.3d 1491, 1496 (10th Cir.1996)(citing *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956)). Thus, I find no jurisdictional impediment.

Since the need for consistency and uniformity in this area is as critical as it is apparent, I would remand with the instruction to refer.

Chief Justice FLAHERTY joins this dissenting opinion.