**Councilperson Darrell L. CLARKE and Councilperson Donna Reed Miller, Petitioners**

v.

**HOUSE OF REPRESENTATIVES OF the COMMONWEALTH of Pennsylvania and Senate of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2008.

Decided Sept. 26, 2008.

George Bochetto and Scott P. Sigman, Philadelphia, for petitioners.

John P. Krill, Jr. and Anthony R. Holtzman, Harrisburg, for respondent, Senate of the Commonwealth of Pennsylvania.

Jonathan F. Bloom, Philadelphia, for respondent, House of Representatives of the Commonwealth of Pennsylvania.

Carter S. Shields, Media, for intervenor, National Rifle Association.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and SIMPSON, Judge.

OPINION BY President Judge LEADBETTER.

Before this court are the preliminary objections of the House of Representatives of the Commonwealth of Pennsylvania (House), the Senate of the Commonwealth of Pennsylvania (Senate) and the National Rifle Association [1] (NRA) to the complaint seeking declaratory judgment filed in our original jurisdiction by Philadelphia City Councilpersons Darrell L. Clarke and Donna Reed Miller (Petitioners).

In May of 2007, the Philadelphia City Council passed seven gun ordinances (Ordinances) which were subsequently signed by Mayor John Street. Bill 040117–A limits handgun purchases to one per month and prohibits straw purchases and sales. Bill 060700 mandates the reporting of lost or stolen firearms. Bill 040136–A requires a license in order to acquire a firearm within Philadelphia or bring a firearm into Philadelphia. Bill 040137 requires the annual renewal of a gun license. Bill 040312 states that a firearm can be confiscated from someone posing a risk of harm. Bill 040315 prohibits the possession or transfer of assault weapons. Bill 040118–A requires that any person selling ammunition report the purchase and the purchaser to the Police Department.

The First Class City Home Rule Act [2] (Home Rule Act), under which the Home Rule Charter of the City of Philadelphia was adopted, states that "[n]otwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are . . . [a]pplicable in every part of the Commonwealth . . . [and][a]pplicable to all the cities of the Commonwealth. . . ." The Home Rule Act thus prohibits Philadelphia, or any city in Pennsylvania, from exercising powers which conflict with mandates of the General Assembly.

The Ordinances were passed despite a statutory limitation in Section 6120(a) of the Uniform Firearms Act [3] (Firearms Act) which states that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." Mindful of this provision, the Ordinances all contained the following statement: "This Ordinance shall become effective upon the enactment of authorizing legislation by the Pennsylvania General Assembly." [4]

1. The preliminary objections filed by the NRA as an intervenor were also filed on behalf of the individual intervenors Vincent K. Gay, Gordon V. Gay, Jon Mirowitz, Eugene Walworth, John Olexa and Charles H. Cox.

2. Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101–13157.

3. 18 Pa.C.S. §§ 6101–6162.

4. Since this case was argued, City Council passed and Mayor Michael Nutter signed five new gun laws. Four of those laws appear to be identical to four of the Ordinances, except the new laws do not contain this language concerning the General Assembly. However, the new laws do not specifically repeal the Ordinances, and they are not part of the record in this case. Thus they do not affect our consideration of the case *sub judice*.

Petitioners seek judgments declaring that each of the Ordinances may take immediate effect, that Section 6120 is unconstitutional and that Section 6120 does not apply to any of the Ordinances to the extent they do not regulate the *carrying or transporting* of firearms. The House has filed preliminary objections based upon ripeness and failure to state a claim upon which relief may be granted. The Senate has filed preliminary objections based upon lack of standing, *res judicata*, collateral estoppel, non-justiciability, failure to state a claim upon which relief may be granted, and scandalous or impertinent matter. The NRA has filed preliminary objections based upon lack of standing, *res judicata*, scandalous or impertinent information, non-justiciability, and failure to state a claim upon which relief may be granted.

In examining the preliminary objections asserting failure to state a claim upon which relief may be granted, we turn first to the argument that the Ordinances are unenforceable because they conflict with a state statute, and Petitioners' countervailing argument that that Section 6120 is unconstitutional because it infringes on the power of Philadelphia to pass and enforce local gun regulations. The City claims that gun regulation is a local, not a statewide, concern. In *Schneck v. City of Philadelphia*, 34 Pa.Cmwlth. 96, 383 A.2d 227 (1978), we examined a Philadelphia ordinance which regulated the acquisition and transfer of firearms. At that time, Section 6120(a) contained language identical to that of the current version, except that it banned regulation of firearms only, not ammunition or components. Specifically, "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession or transportation of firearms when carried or transported for purposes not prohibited by the laws of this commonwealth." We enjoined Philadel-

phia from enforcing the ordinance because "[w]e believe[d] that this statute clearly preempt[ed] local governments from regulating the lawful ownership, possession and transportation of firearms, and we also believe[d] that Philadelphia's ordinance attempt[ed] to regulate firearms in the manner indicated in the statute as prohibited." *Schneck*, 383 A.2d. at 229–30.

Another Philadelphia gun ordinance later came before this court and then our Supreme Court. *See Ortiz v. Commonwealth*, 545 Pa. 279, 681 A.2d 152 (1996), aff'g *Ortiz v. Commonwealth*, 655 A.2d 194 (Pa.Cmwlth.1995). In *Ortiz*, the cities of Pittsburgh and Philadelphia passed ordinances banning certain types of assault weapons. Our Supreme Court characterized the matter before the courts as follows:

> The sum of the case is that the Constitution of Pennsylvania requires that home rule municipalities may not perform any power denied by the General Assembly; the General Assembly has denied all municipalities the power to regulate the ownership, possession, transfer or possession of firearms; and the municipalities seek to regulate that which the General Assembly has said they may not regulate. The inescapable conclusion, unless there is more, is that the municipalities' attempt to ban the possession of certain types of firearms is constitutionally infirm.

*Ortiz*, 545 Pa. at 283–84, 681 A.2d at 155. The court went on to conclude:

> Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia and Pittsburgh, where it may be abridged at will, but

that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation.

*Ortiz,* 545 Pa. at 287, 681 A.2d at 156.

The Ordinances before us are not materially different from those presented in *Schneck* and *Ortiz.* Each one seeks to regulate firearms-an area that both Section 6120 and binding precedent have made clear is an area of statewide concern over which the General Assembly has assumed sole regulatory power. As we stated in *Schneck,* "it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinances to the contrary are unenforceable." 383 A.2d at 229.

In attempting to uphold the Ordinances, Petitioners argue that Section 6120's qualifying phrase "when carried or transported" leaves room for municipalities to regulate any uses of firearms which do not involve carrying or transporting them. Petitioners argue that if the General Assembly intended to preempt any and all municipal gun control, it would have done so instead of including this limitation. Given *Schneck* and *Ortiz,* we cannot agree with this construction of the Firearms Act. The ordinances struck down in those cases were not qualitatively different in that respect from those at issue here. While Petitioners point out that the qualifying phrase "when carried or transported" was not specifically discussed in *Ortiz,* in light of its broad and unqualified language, we cannot distinguish *Ortiz* on this basis. Moreover, this language was at issue in

*Schneck,* 383 A.2d at 230 (Crumlish, Jr., J., dissenting). There, the dissenting opinion quoted the trial court's discussion:

In an even broader inquiry, is the declared "limitation" on the power of a municipality to regulate "lawful ownership, possession or transportation of firearms' confined, as defendants assert, to certain statutorily enumerated events only, i.e., 'when carried or transported for purposes not prohibited by the laws of this Commonwealth." Or, as asserted by plaintiffs, has the total field of the regulation of firearms been preempted by the Commonwealth so that this clause, which invites a more limited intention, is to be modified by interpretation?

*Id.* The majority concluded that Section 6120 "clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms[.]" *Id.* at 229–30. Thus we must conclude that binding precedent precludes our accepting Petitioners' argument on this point.

Nonetheless, Petitioners argue that the rationale in *Ortiz* has been called into question by the recent decision in *Nutter v. Dougherty,* 595 Pa. 340, 938 A.2d 401 (2007). In *Nutter,* our Supreme Court found that because the Election Code [5] addressed certain subjects on an extremely comprehensive level, its failure to address campaign finance limits indicated that the General Assembly did not intend to foreclose local regulation in that arena. 595 Pa. at 365, 938 A.2d at 416. However, the Election Code does not contain language of explicit preemption like that of the Firearms Act, and so the *Nutter* decision is neither controlling nor even particularly informative in the present context. Petitioners also argue the rationale in the *Ortiz* decision should be revisited because

---

**5.** Act of June 3, 1937, P.L. 1333, *as amended,*   25 P.S. §§ 2600–3591.

of changing circumstances, particularly the increase in gun violence in Philadelphia. While we understand the terrible problems gun violence poses for the city and sympathize with its efforts to use its police powers to create a safe environment for its citizens, these practical considerations do not alter the clear preemption imposed by the legislature, nor our Supreme Court's validation of the legislature's power to so act.

Finally, even if we were not constrained by the factors cited above, the very terms of the Ordinances would preclude our granting the relief requested. The Ordinances specifically provide that they will become effective only when authorized by the General Assembly, and it is undisputed that the General Assembly has not done so. Accordingly, even if the law recognized the Philadelphia's power to act in this area in derogation of the legislative prohibition, the city has not done so.

Because Petitioners' complaint failed to state a claim upon which relief may be granted, we must sustain the preliminary objections.

Judges COHN JUBELIRER and LEAVITT did not participate in the decision of this case.

### ORDER

AND NOW, this 26th day of September, 2008, the preliminary objections of the House of Representatives of the Commonwealth of Pennsylvania, the Senate of the Commonwealth of Pennsylvania and the National Rifle Association to the complaint filed in the above-captioned matter are hereby SUSTAINED and the complaint is DISMISSED with prejudice.

### CONCURRING AND DISSENTING OPINION BY Judge SMITH–RIBNER.

I concur in the majority's decision to dismiss the complaint filed by Petitioners seeking a declaratory judgment relating to the enforceability of specific Gun Control Ordinances (Ordinances) enacted in May 2007 by Philadelphia City Council (City Council). I concur with dismissal because City Council inserted conditional language at the end of each of the Ordinances indicating that they shall become effective only upon enactment of authorizing legislation by the legislature, which as of the date of argument in this matter in March 2008 had not occurred. The majority notes that since the March 2008 argument, City Council has enacted five new ordinances, four of which are identical to four of the Ordinances at issue here except that they do not contain the conditional language that was inserted in the Ordinances.

I

I respectfully dissent from the majority's determination that decisions in *Ortiz v. Commonwealth,* 655 A.2d 194 (Pa. Cmwlth.1995), *aff'd,* 545 Pa. 279, 681 A.2d 152 (1996), and in *Schneck v. City of Philadelphia,* 34 Pa.Cmwlth. 96, 383 A.2d 227 (1978), can be read as a clear ban against the City's Ordinances based on preemption principles. The City is struggling to protect its residents as well as its police who face daily threat from gun violence due to the supply of firearms in the hands of those who intend to use them for any unlawful or unjustifiable purpose.

The Ordinances passed in May 2007 are as follows. Bill 040117–A, *Straw and Multiple Handgun Purchase Regulation,* limits handgun purchases to one per thirty-day period and prohibits straw purchases and sales; Bill 060700, *Failure to Report Lost or Stolen Firearm,* requires reporting of a lost or stolen firearm within 24 hours; Bill 040136–A, *Acquisition or Transfer of Firearms,* requires that no person shall acquire a firearm within Philadelphia or

bring one into the City without a license issued by the Police Department; Bill 040137, *Reporting Requirements Upon the Application for or Renewal of a License to Carry a Firearm*, requires that a gun licensee report basic information upon application for or annual renewal of a license; Bill 040312, *Temporary Removal of Firearms of Persons Posing A Risk of Imminent Personal Injury to Self or Others*, provides that a firearm can be confiscated from anyone posing a risk of harm; Bill 040315, *Contraband Weapons, Accessories and Ammunition*, prohibits possession or transfer of assault weapons; and Bill 040118–A, *The Sale or Transfer of Ammunition*, requires that anyone who sells ammunition report the purchase and purchaser to the Police Department to maintain a registry. The final section of each Ordinance provides: "This Ordinance shall become effective upon the enactment of authorizing legislation by the Pennsylvania General Assembly."

On July 11, 2007, Petitioners filed a complaint in the Common Pleas Court of Philadelphia County naming Respondents as defendants and seeking a judgment declaring that the Ordinances are to be enacted and are effective; that Section 6120 of the Pennsylvania Uniform Firearms Act of 1995 (Uniform Firearms Act), *as amended*, 18 Pa.C.S. § 6120, is unconstitutional; that its scope is limited to prohibiting local regulation of "carrying" and "transportation" of firearms; and that the Ordinances do not regulate those particular areas. The case was transferred to this Court by stipulation. On October 23, 2007, Petitioners filed their amended complaint to which Respondents filed their preliminary objections invoking, *inter alia*, the ripeness doctrine, as none of the Ordinances are in effect, and alleging that Petitioners failed to state a claim on which relief may be granted because the Uniform Firearms Act preempts local regulation.

In November 2007, the Court allowed the National Rifle Association (NRA) to intervene.

## II

A fundamental question involved in cases relating to local regulation in areas upon which the state has legislated is whether the local regulation is preempted by state statute. Section 6120 of the Uniform Firearms Act, headed "Limitation on the regulation of firearms and ammunition," provides: "(a) **General rule.**—No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." The City asserts that the Ordinances are not preempted by Section 6120 because they do not regulate firearms while being "carried or transported" for purposes not prohibited by state law.

The majority concludes that Section 6120 and binding precedent make clear that the regulation of firearms is preempted, and it discerns no material difference between the Ordinances and those under review in *Ortiz* and *Schneck*. A close examination of those cases, however, demonstrates otherwise. In *Ortiz* members of City Council, citizens and other petitioners sought a declaration that a Philadelphia ordinance banning certain types of assault weapons was valid and was enacted properly in 1993 pursuant to the City's home rule powers. City Council's intent was to supplement prohibitions of Pennsylvania law relating to offensive weapons by making possession, manufacture, transfer, delivery, sale and use of such weapons a violation of the Philadelphia Code, with certain exceptions. The ordinance added

paramilitary assault weapons and the ammunition and accessories for such weapons to the list of offensive weapons under state law.

This Court reasoned in *Ortiz* that the City's ordinance conflicted with the Section 6120 provision stating that no county, municipality or township may regulate "lawful ownership, possession, transfer or transportation of firearms...." The Court did not apply or discuss the applicability of the remaining provision, *i.e.*, "when carried or transported for purposes not prohibited by the laws of this Commonwealth[,]" as it was not at issue. In any event, the ordinance was declared unenforceable because the legislature had amended the Uniform Firearms Act to broaden the definition of firearms to prohibit the type of firearms ban found in the ordinance. This Court sustained preliminary objections in the nature of a demurrer because the suit failed to state a cause of action. In affirming this Court's order sustaining the demurrer, the Supreme Court relied on Article 9, Section 2 of the Pennsylvania Constitution (dealing with the powers of home rule municipalities) and on Section 6120, and it held that the local effort to ban possession of assault weapons was constitutionally infirm. The court also considered the constitutional right of citizens to bear arms in defense of themselves and the state and, as such, concluded that because the ownership of firearms is constitutionally protected its regulation is a matter of statewide concern.

In *Schneck* the appellants sought to enjoin the City from enforcing an ordinance that regulated acquisition and transfer of firearms in the City, arguing that firearms regulation is a matter of statewide concern that is preempted by the legislature. The ordinance provided that no person could acquire or transfer a firearm in the City or outside of the City (and brought into the City) unless he or she had applied for and obtained a license from the Department of Licenses and Inspections, which required the applicant to provide certain basic information. No license could be issued without prior approval of the Police Department. The appellants argued that the ordinance regulated lawful ownership, possession or transportation of firearms and therefore was preempted under Section 6120.

In reversing the trial court's denial of relief, this Court concluded in *Schneck* that the Uniform Firearms Act totally preempted a local municipality from regulating lawful ownership, possession or transportation of firearms and that the ordinance consequently was prohibited. Because it concluded that the language in Section 6120 was specific, the majority was not persuaded that legislative history review was warranted. In his dissenting opinion, former President Judge Crumlish disagreed that the words of Section 6120 were clear and free from any ambiguity or that they accurately reflected true legislative intent. To support his position that "[t]otal preemption was neither contemplated nor intended[,]" 383 A.2d at 230, Judge Crumlish incorporated an extensive discussion of the legislative history of Section 6120 by the trial judge, Judge Harry A. Takiff, Jr.:

On close examination the seeming broad sweep of the State Act does not so encompass the field of gun control as to lead inexorably to the conclusion of total preemption by the Commonwealth, to the exclusion of all local ordinance and regulation. Thus, the very title of the Act is that of a 'limitation' on regulation; not an elimination or abolition thereof.... [T]he local regulatory conduct which was proscribed was explicitly addressed to 'the *lawful* ownership, possession or transportation of firearms'

(emphasis added) which prompts two queries: a) Does this modification reserve to a political subdivision the power to regulate the 'unlawful' ownership, possession or transportation of firearms? If so, by what standard of 'lawful' or 'unlawful' is the reserved power to be exercised? b) Is the prohibition of regulation of the specified 'lawful *ownership, possession* or *transportation*' so inconsistent with '*Acquisition or Transfer of Firearms*', which is the title and the subject of licensing and regulation under Philadelphia Code 10–814, as to bar the ongoing viability of *both* legislative enactments in dealing with a subject of broad concern and apprehension in contemporary society?

Finally, the prohibition against regulation of firearms 'when carried or transported for purposes not prohibited by the laws of this Commonwealth,' prompts sundry questions, the answers to which are not so obvious from a reading of the statute that understanding may be found within the four corners of the legislative enactment. Thus, one ruminates, may a municipality continue to regulate 'lawful ownership, possession or transportation of firearms' when owned, possessed or transported for an *unlawful* or prohibited purpose, such as the commission or intended commission of a felony, but not so when carried for a purpose not prohibited by the laws of the Commonwealth, such as gaming in season? If so, at what stage of the conduct or purpose, sanctioned or prohibited by law, does the illusive power in a municipality to regulate appear or disappear? *In an even broader inquiry, is the declared 'limitation' on the power of a municipality to regulate 'lawful ownership, possession or transportation of firearms' confined, as defendants assert, to certain statutorily enumerated events only, i. e., 'when carried or transported for purposes not prohibited by the laws of this Commonwealth.' Or, as asserted by plaintiffs, has the total field of the regulation of firearms been preempted by the Commonwealth so that this clause, which invites a more limited intention, is to be modified by interpretation?*

*Id.,* 383 A.2d at 230 (final emphasis added).

In reviewing the legislative history of Section 6120, the *Schneck* trial judge examined the first draft of House Bill 861 introduced in April 1973, which provided that except in cities of the first class the legislature would occupy the "whole field" of regulating the transfer, ownership, possession and transportation of firearms and that existing ordinances were null and void. The draft provided also that cities of the first class may not regulate lawful ownership, possession or transportation of firearms by "hunters in transit." The amendment to the Bill in June 1973 merely modified the definition of firearms to exclude air rifles; and upon third consideration of the Bill in April 1974 it was amended solely to expand the limitation on the power of cities of the first class to regulate lawful ownership, possession or transportation of firearms by "hunters in transit" into the class of persons licensed to hunt or fish in the state and so forth.

An amendment reported by the Senate in June 1974 deleted the word "transfer" from the House-approved declaration of occupying the whole field of regulation; in July 1974 the Bill was re-reported as amended with the heading being changed and the declaration that the legislature occupied the whole field of regulation being deleted in its entirety; and in September 1974 the Bill was amended, *inter alia*, to change its heading to "limiting the regulation of firearms by counties, municipalities or townships" and to substitute certain language with broader language to read as

follows: "firearms when carried or transported for purposes not prohibited by the laws of this Commonwealth." The amended Bill was passed by the Senate, was returned to the House for concurrence and was approved by the Governor on October 18, 1974.

The *Schneck* trial judge reviewed as well legislative debates over the enactment of Section 6120 and noted that sportsmen and sportsmen's organizations were those primarily concerned about the Bill and any problems associated with transportation of firearms through the City on their way to and from hunting or other sporting events. Those opposed were concerned with the crimes of violence involving firearms, to be ameliorated by the licensing restrictions and procedures in the Philadelphia ordinance banning the acquisition of firearms, *inter alia*, by persons under the age of 18 or by habitual drunkards. The trial court accepted the unconditional declaration of the Bill's sponsor as clear manifestation of legislative intent. The sponsor opined that in its final form the Bill would not affect the local ordinance in "any way, shape or form." *Id.*, 383 A.2d at 233. Because courts may not alter express language and intent of the legislature under the guise of statutory construction, the trial court concluded that the ordinance, at least as to licensing the acquisition or transfer of firearms in the City, was viable and remained in effect.

### III

On the subject of preemption, the Pennsylvania Supreme Court in *Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401 (2007), affirmed this Court's order upholding the validity of Philadelphia's Campaign Finance Law (Philadelphia Code Chapter 20–1000). The Supreme Court rejected the arguments that field preemption barred the local ordinance, that the Penn-

sylvania Constitution required uniformity with respect to laws regulating elections and that the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591, offers a comprehensive regulatory scheme governing all facets of campaign contributions and expenditures. It analyzed the City's exercise of power based upon the view that such power is valid absent a limitation contained in the Constitution, in legislative acts or in the Home Rule Charter, with grants of municipal power to be liberally construed in favor of the home rule municipality and any ambiguity being resolved in its favor, citing *County of Delaware v. Township of Middletown,* 511 Pa. 66, 511 A.2d 811 (1986).

Recognizing that a balance must be reached between the home rule municipality's authority and preemption principles, the Supreme Court clarified in *Nutter* the three forms of preemption (express, conflict and field). It explained that where no express signal of preemptive intent existed it had to consider whether the City's Campaign Finance Law directly conflicted with the Election Code or whether the state statute manifested a legislative intent to occupy the field of elections so comprehensively as to exclude all local regulation. The court stressed that the exercise of home rule municipality authority may not be intruded upon lightly, that mere legislating in a field is insufficient for a finding of preemption and that the court reaffirmed the rigor of its preemption precedent by recognizing that as of its decision in *Mars Emergency Med. Servs., Inc. v. Township of Adams,* 559 Pa. 309, 740 A.2d 193 (1999), it had found preemption only in the areas of *alcoholic beverages, anthracite strip mining* and *banking.* And, as previously indicated, a municipality may make further regulation in aid and furtherance of purposes of the general law.

In holding that the Campaign Finance Law was not preempted by the Election Code, the Supreme Court reasoned in part as follows:

> Far from proving [Appellant Fattah's] point, however, this enumeration of statutorily controlled activities conversely suggests that when an Election Code so comprehensively deals with certain subjects yet fails materially to address itself to campaign contribution limits—especially where that omission is not identified as a function of legislative design to leave unfettered all such matters—it all but compels the inference that the legislature, in fact, intended not to foreclose local regulation of campaign contributions for local elections. Although the General Assembly may preempt such legislation, and has done so in enough other cases that its collective awareness of the value of so providing in explicit terms cannot be disputed, as of this writing it has not done so in the Election Code. Absent a clear legislative manifestation of such an intent, Appellants' preemption arguments must fail.

*Nutter,* 595 Pa. at 365, 938 A.2d at 416.

The Supreme Court's explanation of preemption case law, if nothing else, fosters doubt and uncertainty in the present matter as to legislative intent to preempt the regulation of firearms. There is no express signal in Section 6120 to show preemptive intent, and there is no language in the Ordinances relating, in particular, to reporting of lost or stolen firearms, reporting basic information upon application for or renewal of gun licenses or reporting the purchase of ammunition that

conflicts with state law, especially if there is no legislation in the areas.

Finally, there is nothing in Section 6120 to demonstrate legislative intent to occupy the entire field of firearm regulation. Pertinent to this issue is the very heading of Section 6120 that currently reads: "Limitation on the regulation of firearms and ammunition." As pointedly observed by the *Schneck* trial judge, the heading of Section 6120 does not read "elimination" or "abolition" of local regulation. *See* Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924 (providing that headings prefixed, *inter alia,* to titles, chapters, sections or other divisions of a statute shall not control but may be used to aid in construction of the statute); *also* Black's Law Dictionary, 8th ed., at 947 (defining "limitation" in part as the act of limiting or the state of being limited and defining "limit" in part as a restriction or restraint or a boundary or defining line). Thus the legislature's use of "limitation" in the heading connotes restriction or boundary imposed upon local regulation as opposed to outright ban. Moreover, the Supreme Court indicated in *Nutter* that the legislature has asserted preemption in enough areas to know how to do it in explicit terms.[1] The legislature has not explicitly asserted preemption of firearm regulation; therefore, it is reasonable to conclude that the City has authority to adopt ordinances if they do not regulate lawful ownership, possession, transfer or transportation of firearms etc. "when carried or transported" for purposes not prohibited by state law.

---

1. *See Pennsylvania Gaming Control Board v. City Council of Philadelphia,* 593 Pa. 241, 263 n9, 928 A.2d 1255, 1268 n9 (2007) (referencing original text of Section 1506 of the Act known as the Gaming Act, 4 Pa.C.S. § 1506, which provided that "conduct of gaming as permitted under this part, . . . shall not be prohibited or otherwise regulated by any ordinance, home rule charter provision, resolution, rule or regulation of any political subdivision or any local or State instrumentality or authority that relates to zoning or land use to the extent that the licensed facility has been approved by the board").

## IV

Recently, the United States Supreme Court decided a challenge to the constitutionality of gun control legislation passed by the District of Columbia. In *District of Columbia v. Heller,* — U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court struck down on Second Amendment grounds a local law banning possession of handguns and requiring D.C. residents to maintain their lawfully owned firearms unloaded and disassembled or bound by a trigger lock or other device unless the handguns are located in the residents' places of business or being used for lawful recreational purposes. After engaging in an exhaustive discussion of the right of the people to keep and bear arms, which it noted is not without limitations, the Supreme Court acknowledged its awareness of the problem of handgun violence facing the District and proposed that other regulatory means were available to the District to combat the problem. Philadelphia too seeks other regulatory means to combat gun violence within its borders.

Petitioners' averments in the amended complaint [2] include instances of acts committed in Philadelphia by those who have obtained firearms through straw purchases, including the senseless murders of 10–year old Faheem Thomas–Childs outside of his school or of 14–year old middle school student Anthony Oliver. By judicial notice I recognize the recent deaths of Philadelphia Police Officer Gary F. Skerski, Philadelphia Police Officer Charles Cassidy and Philadelphia Police Sergeant Steven Liczbinski, all shot in the line of duty, as further illustration of the extent and gravity of the gun violence problem in Philadelphia.[3] While noting the gun violence problem, the majority fails to demonstrate with certainty that the law precludes relief. Likewise, the majority fails to establish that all of the Ordinances, at a minimum relating to reporting lost or stolen firearms or basic information upon application or renewal of a license, are preempted.

In his dissent in *Ortiz,* former Supreme Court Justice Nigro wisely concluded that because the City "is besieged" by gun violence, it is fundamentally essential that it be entitled to enact ordinances for the public safety, health and welfare of its citizens. To reiterate, I concur in the result reached by the majority because of the conditional language inserted by City Council at the end of each of the Ordinances, but I dissent from the decision that the City's declaratory judgment complaint fails to state a cause of action upon which relief may be granted.

---

2. In ruling on preliminary objections in the nature of a demurrer, the Court must view all of the non-moving party's well-pleaded allegations as true, and only those facts specifically admitted can be considered against the non-moving party. *Ridge v. State Employees' Retirement Board,* 690 A.2d 1312 (Pa.Cmwlth. 1997). To sustain a demurrer, it must appear with certainty that the law will permit no recovery and all doubt must be resolved in favor of refusing to sustain the demurrer. Altoona *Housing Authority v. City of Altoona,* 785 A.2d 1047 (Pa.Cmwlth.2001).

3. *See* http://media.my foxphilly.com/Philadelphia-Officer-Killed-In-Line-Of-Duty/1/ details. htm.