IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia           :
                                      :  No. 1204 C.D. 2020

v.                              :

                                      :  Argued: November 15, 2021

Rashad T. Armstrong,        :
              Appellant       :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH                        FILED: February 14, 2022

In this action commenced by the City of Philadelphia (City), Rashad T. Armstrong (Appellant) appeals from the November 12, 2020 order of the Court of Common Pleas of Philadelphia County (trial court) denying his motion for a permanent injunction that sought to enjoin the City from enforcing Philadelphia Code §10-838a (Section 10-838a),[1] which imposes a fine on individuals who fail to report a lost or

---

[1] Titled "Failure to Report Lost or Stolen Firearm," Section 10-838a provides:

> (1) *Prohibited Conduct*. No person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within 24 hours after the loss or theft is discovered.
>
> (2) *Penalties*. A violation of this Section shall be deemed a Class II Offense, subject to the penalties set forth in Section 1-109.
>
> (3) *Repeat Offenders*. Any person who commits, on more than one occasion, a violation of this Section, shall be guilty of a separate offense of Repeat Violation, and for each such Repeat Violation, shall be

**(Footnote continued on next page…)**

stolen firearm, on the ground that it is preempted by Section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA), 18 Pa.C.S. §6120(a).[2]  We reverse and remand to the trial court with instructions to enter a permanent injunction in favor of Appellant.

## Background

On November 1, 2019, the City filed a complaint alleging that Appellant violated Section 10-838a in failing to report a firearm missing or stolen within 24 hours to the Philadelphia Police Department and seeking a fine in the amount of $2,000.00. The City averred that on December 6, 2017, Appellant purchased a SR9E Model Ruger with the serial number 338-18643 (the firearm) from New Frontier Outfitters located at 9280 Ridge Pike, Philadelphia, Pennsylvania.  On April 23, 2018, Appellant knew

---

subject to a fine of not more than one thousand nine hundred dollars ($1,900) for any violation committed in 2008, and not more than two thousand dollars ($2,000) for any violation committed in 2009 or thereafter, or imprisonment for not more than ninety (90) days, or both. A person shall be guilty of a Repeat Violation regardless [of] whether the second or subsequent violation occurs before or after a judicial finding of a first or previous violation. Each violation, after the first, shall constitute a separate Repeat Violation offense.

City of Philadelphia, Pa., the Philadelphia Code §10-838a (2008) (Philadelphia Code).  Section 1-109 states that in terms of a Class II offense, the fine "for any violation committed on January 1, 2009[,] or thereafter, [shall be] two thousand dollars ($2,000) for each violation." Philadelphia Code  §1-109.

[2] Act of October 18, 1974, P.L. 768, *as amended*.  Section 6120(a) of the UFA states:

(a) *General rule.*-- No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

18 Pa.C.S. §6120(a).

2

that the firearm he owned was either lost or stolen. On May 3, 2018, the Lancaster Police Department in Lancaster City, Lancaster County, Pennsylvania, found the firearm, searched the National Crime Information Center's database on lost or stolen guns, and received no matches. After the firearm was traced to Appellant, the Philadelphia Police Department interviewed him on June 26, 2018, and he reported for the first time that the firearm had been stolen from him on or about April 23, 2018. (Trial court op. at 1-2.)

In the course of the pleading stage of the litigation, Appellant filed a motion for a permanent injunction on December 16, 2019, asserting that Section 10-838a was invalid and unenforceable because it was preempted by Section 6120(a) of the UFA. Over Appellant's objection, the trial court, on March 9, 2020, granted a petition to intervene filed by CeaseFire Pennsylvania Education Fund, Philadelphia Anti-Drug/Anti-Violence Network, Inc., Mothers in Charge, Inc., and Kimberly Burrell and Freda Hall (Intervenors). After the City filed an answer to the motion for a permanent injunction and Intervenors filed a brief in opposition to the motion, the trial court convened a hearing, via Zoom, on November 12, 2020, and denied Appellant's motion that same day. On November 13, 2020, Appellant filed a notice of appeal to this Court and, on November 20, 2020, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days. In turn, Appellant filed his concise statement on November 23, 2020, asserting that the trial court erred in denying his motion for a permanent injunction, permitting the witnesses' testimony and the admission of exhibits at the hearing, and granting Intervenors' petition for intervention. On May 20, 2021, the trial court issued its Pa.R.A.P. 1925(a) opinion. (Trial court op. at 3-4.)

3

In its opinion, the trial court supported the denial of permanent injunctive relief by focusing, in notable part, on the fact that on January 31, 2019, Appellant tendered a guilty plea in the Court of Common Pleas of Philadelphia County to 3 firearm offenses, namely 2 violations of the UFA, Sections 6108 and 6111, 18 Pa.C.S. §§6108 (Carrying firearms on public streets or public property in Philadelphia), 6111 (Illegal sale or transfer of firearms), and one violation of the Crimes Code,[3] Section 4906, 18 Pa.C.S. §4906 (False reports to law enforcement authorities), and was sentenced to 7 ½ to 23 months' incarceration, followed by 2 years of probation. In the guilty plea colloquy, which the trial court appended to its opinion, Appellant admitted that he purchased six firearms, including the firearm at issue here, and five of them were recovered from other persons during arrests or pursuant to a search warrant. With respect to the sixth firearm, Appellant falsely reported to the police that it had been stolen and later conceded that he gave it to an unknown person. During the time of the purchases, Appellant did not possess a valid license to own or carry a firearm and, in every instance, he did not report to the police that a firearm had been lost or stolen. (Trial court op. at Ex. A; Notes of Testimony (N.T.), 1/31/2019, at 8-15.)

The trial court then concluded that it properly denied Appellant permanent injunctive relief based on the following rationale:

> Appellant avers that this court committed an error of law, abused its discretion, or violated Appellant's constitutional rights by denying the [m]otion for [p]ermanent [i]njunction. On January 31, 2019, Appellant, at his criminal sentencing, admitted to being the straw purchaser on [6] different occasions and that he did not have a valid license to carry a firearm. Appellant's own attorney stated that, "He's the perfect straw purchaser." Appellant's guilty plea and subsequent probation precluded him from owning a firearm again under state law as well as federal law[.] In order to

---

[3] 18 Pa.C.S. §§101-9402.

4

obtain a permanent injunction, the law is clear. Appellant must show actual and substantial injury is likely in the future. Instantly, Appellant cannot show that there is a future injury because he is barred from owning a firearm as a result of his actions as a straw purchaser and his subsequent guilty plea thereto.

Appellant is also unable to obtain a permanent injunction as he approaches this court with unclean hands. Under the doctrine of unclean hands, a court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. . . . Instantly, Appellant arrives with unclean hands and a history of straw purchasing firearms that have then been used in shootings and other crimes. Appellant violated a statute and now seeks to enjoin the enforcement related thereto even after operating deceitfully while committing his crimes.

[A] party seeking a permanent injunction must prove that greater injury will result in refusing rather than granting the relief requested. This court heard testimony and received *amicus* briefs from numerous community entities and groups stating the danger that firearms pose to our community in Philadelphia. Dr. Dauer, a Temple University Hospital trauma surgeon, stated, "We see gunshot wound victims pretty much on a daily basis, anywhere from [2] to [10] a day, on average." Dr. Nance, the director of the Pediatric Trauma Program at the Children's Hospital of Philadelphia and an investigator for the Center for Injury Research and Prevention, discussed both the Post Traumatic Stress that accompanies children that suffer from a firearm injury [and] that [12] to [15%] of firearm injuries in children result in death. Ms. Harley, the Deputy Managing Director for Criminal Justice and Public Safety, discussed the gun violence occurring all throughout the [C]ity and certain programs that [the City] has taken to curb gun violence. Appellant does not meet [this] burden.

(Trial court op. at 5-7) (internal citations and some quotation marks omitted).

Otherwise, the trial court determined that Appellant could not appeal from the March 5, 2020 order granting Intervenors' petition to intervene. In so doing, the

5

trial court noted that a party has 30 days from which to file a notice of appeal from an order, and Appellant did not file a notice of appeal until November 13, 2020, approximately "219 days after the deadline to file an appeal." *Id.* at 8. Accordingly, the trial court concluded that an appeal from the order granting intervention would be untimely and, thus, unreviewable on appeal in this Court.

## Discussion

Before this Court, Appellant contends that the trial court erred in (1) denying his request for a permanent injunction, (2) granting Intervenors' petition for intervention, and (3) allowing witnesses to testify, and documentary evidence to be admitted, during the hearing on the permanent injunction.

## Permanent Injunction

Appellant argues that he is entitled to a permanent injunction because his right to relief is clear, in that Section 10-838a is preempted by Section 6120(a) of the UFA; an injunction is necessary to avoid an injury that cannot be compensated by damages; and greater injury will result if the request for the injunction was denied as compared to if it was granted. In addition, Appellant asserts that the trial court erred in applying the standard for a *preliminary injunction*, requiring him to show irreparable harm and the need for immediate relief, because these elements are not applicable to— and need not be proven to obtain—a *permanent injunction*.

In response, the City contends that Appellant does not possess a clear right to relief because his actions as a "straw purchaser," which the City states is the underlying conduct proscribed in Section 10-838a, are illegal under Section 6111(g) of the UFA and, therefore, fall outside the scope of Section 6120(a)'s preemptive reach.

6

Citing *Minich v. County of Jefferson*, 869 A.2d 1141 (Pa. Cmwlth. 2005) (*en banc*), the City contends that Section 6120(a) only preempts those municipal laws that regulate the *lawful* ownership, possession, transfer, or transportation of firearms, but does not preempt municipal laws that regulate the *unlawful* ownership, possession, transfer, or transportation of firearms. The City also argues that Section 6120(a) does not preempt an ordinance that does not directly concern the ownership, possession, transfer, or transportation of firearms.

Additionally, the City maintains that greater injury would result if a permanent injunction was issued because Appellant failed to adduce evidence of individual harm, while the City submitted evidence demonstrating grave injury to the public health and safety of the citizens of the City. In a cursory fashion, the City asserts that the trial court applied the correct standard for a permanent injunction and that Appellant's suggestion that the trial court "applied the wrong standard is purely speculative." (City's Br. at 49.)

"To justify the award of a permanent injunction, the party seeking relief must establish [1] that his right to relief is clear, [2] that an injunction is necessary to avoid an injury that cannot be compensated by damages, and [3] that greater injury will result from refusing rather than granting the relief requested." *Kuznik v. Westmoreland County Board of Commissioners*, 902 A.2d 476, 489 (Pa. 2006). "However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003) (internal citations and quotation marks omitted). "Additionally, when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the

trial court committed an error of law," *id.*, and, as such, "our standard of review is *de novo,* and our scope of review is plenary." *Kuznik*, 902 A.2d at 489.

In determining whether Appellant possesses a clear right to relief (the first prong), we review the case law interpreting and applying Section 6120(a) of the UFA. In *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), our Supreme Court issued a seminal case that has served as a beacon, providing the guiding light that would solidify the bedrock foundation for the current state of this Court's precedent. In that case, the cities of Philadelphia and Pittsburgh, which are both home rule municipalities, passed ordinances that banned "certain types of assault weapons in Philadelphia County" and "certain specified assault weapons within Pittsburgh's physical boundaries." *Id.* at 154. To justify the lawfulness of the ordinances and their authority to pass them, the cities argued, *inter alia*, that "the right of a city to maintain the peace on its streets through the regulation of weapons [was] intrinsic to the existence of the government of that city and, accordingly, an irreducible ingredient of constitutionally protected [h]ome [r]ule." *Id.* at 156. The cities further contended that "home rule municipalities may be restricted in their powers only when the General Assembly has enacted statutes on matters of statewide concern" and asserted that Section 6120(a) of the UFA fell short of accomplishing this objective. *Id.*

On appeal, the Supreme Court rejected the cities' arguments. Citing article IX, section 2 of the Constitution of Pennsylvania, PA. CONST. art. IX §2 ("A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time"), and article I, section 21 of the Pennsylvania Constitution, PA. CONST. art. I §21 ("The right of the citizens to bear arms in defense of themselves and

the State shall not be questioned"), the Court concluded that Section 6120(a) of the UFA trumped the cities' ordinances. In so holding, the Supreme Court explained:

> [T]he General Assembly has denied all municipalities the power to regulate the ownership, possession, [and] transfer of firearms . . . . Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and *the General Assembly, not city councils, is the proper forum for the imposition of such regulation*.

*Ortiz*, 681 A.2d at 154-56 (emphasis added).

Following and relying on *Ortiz*, this Court, on a variety of occasions, has struck down legislation passed at the local level on the ground that the legislation was preempted by Section 6120(a) of the UFA. Ultimately, when distilled to its essence, the underlying conclusion to be extracted from these cases is that the regulation of firearms is an area where legislative activity is vested singularly and absolutely in the General Assembly of the Commonwealth. For instance, in *Clarke v. House of Representatives*, 957 A.2d 361 (Pa. Cmwlth. 2008), this Court reviewed a number of ordinances that related to, or encroached into, the sphere of firearm regulation. We held: "Each [ordinance] seeks to regulate firearms—an area that both Section 6120 and binding precedent have made clear is an area of statewide concern over which the General Assembly has assumed *sole* regulatory power." *Id.* at 364 (emphasis added). *See, e.g.*, *Firearm Owners Against Crime v. Lower Merion Township*, 151 A.3d 1172, 1179 (Pa. Cmwlth. 2016) (recognizing that "the UFA explicitly prohibits a township from regulating 'in any manner' and contains no express exemptions authorizing a township to enact ordinances permitting firearm regulation on its property"); *Dillon v. City of Erie*, 83 A.3d 467, 473 (Pa. Cmwlth. 2014) (*en banc*) (concluding that Section 6120(a) "precludes the [c]ity from regulating the lawful possession of firearms" and "preempts all firearms regulation thereby prohibiting the [c]ity from regulating the

9

possession of firearms in its parks"); *National Rifle Association v. City of Philadelphia*, 977 A.2d 78, 82 (Pa. Cmwlth. 2009) (*en banc*)[4] (rejecting the city's argument that the preemptive force of Section 6120(a) is "limited to the *lawful* use of firearms" because "the crystal clear holding of our Supreme Court in *Ortiz* . . . precludes our acceptance of the [] argument") (emphasis in original); *Schneck v. City of Philadelphia*, 383 A.2d 227, 229-30 (Pa. Cmwlth. 1978) ("We believe that this statute clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms."). Significantly, in passing, our Supreme Court recently addressed its holding in *Ortiz*, apparently for the first time since the High Court issued that decision, reaffirming and reiterating that Section 6120 of the UFA verifies "the General Assembly's reservation of the *exclusive prerogative* to regulate firearms in this Commonwealth." *Commonwealth v. Hicks*, 208 A.3d 916, 926 n.6 (Pa. 2019), citing *Ortiz* (emphasis added).

Factually and legally, our decision in *Clarke* is controlling authority in this matter.

In *Clarke*, the Philadelphia City Council passed seven ordinances in 2007 that (1) *mandated the reporting of lost or stolen firearms*, (2) limited handgun purchases to one per month and prohibited straw purchases and sales, (3) required a license in order to acquire a firearm within Philadelphia or bring a firearm into Philadelphia, (4) required the annual renewal of a gun license, (5) stated that a firearm can be confiscated from someone posing a risk of harm, (6) prohibited the possession or transfer of assault weapons, and (7) required that any person selling ammunition report the purchase and the purchaser to the police department.

---

[4] *City of Philadelphia* was overruled on other grounds by *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 511-13 (Pa. Cmwlth. 2019) (*en banc*) (*FOAC*), *affirmed*, 261 A.3d 467 (Pa. 2021).

In seeking a declaration that the ordinances were not preempted by Section 6120 of the UFA, the City initially argued that Section 6120 was unconstitutional because it infringed on the power of the City to pass and enforce local gun regulations. In dismissing this argument, we stated:

> The [o]rdinances before us are not materially different from those presented in *Schneck* and *Ortiz*. Each one seeks to regulate firearms—an area that both Section 6120 and binding precedent have made clear is an area of statewide concern over which the General Assembly has assumed sole regulatory power. As we stated in *Schneck*, "it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinances to the contrary are unenforceable." 383 A.2d at 229.

*Clarke*, 957 A.2d at 364.

The City also argued "that Section 6120 does not apply to any of the [o]rdinances to the extent they do not regulate the *carrying or transporting* of firearms." *Id.* at 363 (emphasis in original). More specifically, the City contended "that Section 6120's qualifying phrase 'when carried or transported' leaves room for municipalities to regulate any uses of firearms which do not involve carrying or transporting them" and postulated that, "if the General Assembly intended to preempt any and all municipal gun control, it would have done so instead of including this limitation." *Id.* at 363-64. Finding no merit in this line of reasoning, this Court in *Clarke* explained:

> Given *Schneck* and *Ortiz*, we cannot agree with this construction of the [UFA]. The ordinances struck down in those cases were not qualitatively different in that respect from those at issue here. While [the City of Philadelphia] point[s] out that the qualifying phrase "when carried or transported" was not specifically discussed in *Ortiz*, in light of its broad and unqualified language, we cannot distinguish

*Ortiz* on this basis. Moreover, this language was at issue in *Schneck*, 383 A.2d at 230 (Crumlish, Jr., J., dissenting). There, the dissenting opinion quoted the [the court of common pleas'] discussion:

> In an even broader inquiry, is the declared "limitation" on the power of a municipality to regulate "lawful ownership, possession or transportation of firearms" confined, as [the municipalities] assert, to certain statutorily enumerated events only, *i.e.*, "when carried or transported for purposes not prohibited by the laws of this Commonwealth." Or, as asserted by [the plaintiffs], has the total field of the regulation of firearms been preempted by the Commonwealth so that this clause, which invites a more limited intention, is to be modified by interpretation?

> *Id.* [However,] [t]he majority [in *Schneck*] concluded that Section 6120 "clearly preempts local governments from regulating the lawful ownership, possession and transportation of firearms." *Id.* at 229-30. Thus, we must conclude that binding precedent precludes our accepting [the City's] argument on this point.

*Clarke*, 957 A.2d at 364. Accordingly, and for these reasons, this Court held that all seven of the ordinances mentioned above were preempted by Section 6120 of the UFA, including the City's ordinance mandating that a lost or stolen firearm be reported to the Philadelphia Police Department.

Ultimately, the lost and stolen ordinance that the City enacted and was at issue in *Clarke* is nearly, if not completely, identical to current Section 10-838a. *Compare* Philadelphia Code §10-838(1), added by Bill No. 060700 (approved May 9, 2007) ("No person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within 24 hours after the loss or theft is discovered"), *with* Section 10-838a, added by Bill No. 080032-

12

A (approved April 10, 2008) ("No person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within 24 hours after the loss or theft is discovered.").[5]  At the very least, the two are materially indistinguishable.  Hence, as this Court held that the City's lost and stolen ordinance was preempted by Section 6120(a) in *Clarke*, we must reach the same result here and conclude that Section 10-838a is also preempted.

The City's reliance on *Minich* to save Section 10-838a from the preemptive reach of Section 6120(a) is unavailing.  In *Minich*, this Court upheld a county's ordinance banning the possession of firearms in a county courthouse from a preemption challenge under Section 6120(a) because the "ordinance [did] *not* regulate the *lawful* possession of firearms."  *Id.* at 1144 (emphasis in original).  Rather, the ordinance "pertain[ed] only to the *unlawful* possession of firearms, *i.e.*, possession 'prohibited by the laws of this Commonwealth,'" *id.* at 1143 (quoting 18 Pa.C.S. §6120(a), namely Section 913(a)(1) of the Crimes Code, which makes it is unlawful for a person to "knowingly possesses a firearm . . . in a court facility."  18 Pa.C.S. §913(a)(1).  However, in *Lower Merion Township*, this Court differentiated *Minich*, because the ordinance at issue in that case, "[u]nlike the ordinance in *Minich,* [did] not solely regulate the possession of firearms that the General Assembly has already decided to be unlawful" and, "[u]nlike *Minich,* the [t]ownship [did] not point to any corresponding provision in the Crimes Code that contains such a blanket ban of firearm possession."  *Lower Merion Township*, 151 A.3d at 1177.

Here, as in *Lower Merion Township*, the City does not cite any corresponding provision in the Crimes Code or the UFA that mandates the reporting of

---

[5]The City's Code is available at:
https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-199997
(last visited February 10, 2020).

a lost or stolen firearm to police officials. Although the City attempts to recharacterize Section 10-838a as a law banning "straw purchasing," and Section 6111 of the UFA generally prohibits individuals from engaging in the unlawful transfer or sale of a firearm,[6] Section 10-838a, by its terms, has nothing to do with—and does not involve— the acts of selling, delivering, or transferring a firearm to another individual. Rather, Section 10-838a imposes a reporting requirement on individuals who own and possess a firearm in the event a firearm is either lost or stolen and inflicts civil penalties on individuals for failing to fulfill that requirement.[7] As such, we conclude that Section 10-838a does not prohibit conduct that the Crimes Code or the UFA outlaws in a mirror-like fashion and, consequently, our decision in *Minich* is inapplicable.[8]

---

[6] *See, e.g.*, 18 Pa.C.S. §§6111(g)(1) (imposing criminal sanctions on "[a]ny person, licensed dealer, licensed manufacturer or licensed importer who knowingly or intentionally sells, delivers or transfers a firearm in violation of this section").

[7] Indeed, the City has a section in its Code that specifically pertains to "straw purchasers," defining the term to mean "[a]ny person who conducts or attempts to conduct a gun purchase on behalf of another person." Philadelphia Code §10-831a. This section of the Code imposes application and reporting requirements prior to the sale or transfer of a firearm, states that "[n]o one shall act as a straw purchaser in any handgun transaction in order to evade the provisions of this [s]ection," proscribes that "[n]o prospective firearm purchaser or other transferee shall be allowed to purchase or receive more than one handgun in any 30-day period," and inflicts fines for a violation. Philadelphia Code §10-831a.

[8] In any event, we note that even if Section 10-838a could be deemed to be a "straw purchaser" ordinance, in *City of Philadelphia*, the City enacted, *inter alia*, two ordinances in 2008, and one of those was a "Straw Purchaser Ordinance," which prohibited any person when purchasing a handgun from acting as a straw purchaser and rendered it unlawful for a person to purchase more than one handgun within any 30-day period, except for a person who is not a straw purchaser. On appeal to this Court, the City asserted that Section 6120(a) of the UFA, by its own language, only prohibited municipalities from regulating "the *lawful* ownership, possession, transfer or transportation of firearms, ammunition or ammunition components," 18 Pa.C.S. §6120(a) (emphasis added), and contended that, in enacting the "Straw Purchaser Ordinance," it was simply regulating activity that was already deemed to be *unlawful* by our General Assembly in the Crimes Code.

**(Footnote continued on next page…)**

14

Therefore, we conclude that Appellant's right to relief is well established because a straightforward application of our case law interpreting Section 6120(a) leads to the inescapable conclusion that Section 10-838a is preempted and therefore invalid and unenforceable.

Turning to the balance of harms inquiry (the third prong), our decision in *Dillon* adequately explained why the balance of harms will always favor the individual

---

However, relying on our previous decision in *Clarke* and that case's discussion of *Schneck* and *Ortiz*, an *en banc* panel of this Court analogized the cases and concluded:

> Similarly here, the fact that the Court in *Ortiz* did not discuss the statutory language relied upon by the City does not provide a legitimate basis for us to ignore its holding. Unfortunately, with respect to the matter before us, while we may agree with the City that preemption of [Section 6120] appears to be limited to the *lawful* use of firearms by its very terms, we believe, however, that the crystal clear holding of our Supreme Court in *Ortiz* that, "the General Assembly has [through enactment of Section 6120(a)] denied all municipalities the power to regulate the ownership, possession, transfer or [transportation] of firearms," [681 A.2d at 155], precludes our acceptance of the [] argument . . . .

*City of Philadelphia*, 977 A.2d at 82-83 (emphasis in original; brackets added). As such, the *City of Philadelphia* Court held that Section 6120(a) of the UFA preempted the "Assault Weapons Ordinance" and the "Straw Purchaser Ordinance," irrespective of the fact that those ordinances purported to outlaw and punish that which had already been declared unlawful by our General Assembly. *See Lower Merion Township*, 151 A.3d at 1177 (concluding that "the [t]ownship's argument that the UFA does not preempt a municipality's regulation of unlawful firearm possession was expressly rejected by this Court in [*City of Philadelphia*]" and determining that, in the *City of Philadelphia* decision, "the critical upshot [was] our recognition that *Ortiz's* 'crystal clear holding' prohibits this Court from endorsing the argument that a cognizable distinction exists between regulating lawful activity and unlawful activity").

Although our decisions in *City of Philadelphia* and *Lower Merion Township* did not expressly overrule *Minich*, we recognize that a degree of tension exists between our *en banc* decisions in *Minich* and *City of Philadelphia*. Nonetheless, at least for present purposes, we need not definitely resolve that tension because the City has not cited any clear pronouncement from our General Assembly imposing a requirement on purchasers of firearms to report a lost or stolen firearm to police officials.

in the situation where a municipal entity seeks to enforce an ordinance and/or law that is preempted by Section 6120(a) of the UFA:

> The argument that a violation of law can be a benefit to the public is without merit. When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. . . .
>
> [T]he [c]ity's unlawful regulation of the lawful possession of firearms shows that a greater injury will occur by refusing to grant the injunction because . . . the [c]ity's [o]rdinance is unenforceable; the injunction is reasonably suited to abate the offending activity by enjoining the enforcement of this unlawful and unenforceable ordinance; and the injunction will not adversely affect the public interest because the [c]ity was prohibited from enacting [the ordinance] and the ordinance is, again, unlawful and unenforceable.

*Dillon*, 83 A.3d at 474.

Moreover, in *Lower Merion Township*, this Court followed and relied upon *Dillon* in concluding that, *per se*, the balance of harms will always weigh in favor of the individual when the individual seeks to enjoin a municipal ordinance and/or law that is preempted by Section 6120(a):

> The [t]ownship next argues that it would suffer substantial harm if the [o]rdinance was enjoined because it is essential to the safety of [t]ownship residents and to the public's use and enjoyment of [t]ownship parks. However, contrary to the [t]ownship's assertion, we have stated that "[w]hen the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public." *Dillon*, 83 A.3d at 474.
>
> Thus, we conclude that greater injury would result from refusing an injunction than granting it because refusing an injunction would sanction the [t]ownship's continued statutory violations of the UFA and, therefore, be injurious to [plaintiffs/petitioners] and the public.

16

151 A.3d at 1181.

Based on *Dillon* and *Lower Merion Township*, we conclude, contrary to the trial court, that the balance of harms weighs in favor of Appellant and the granting of a permanent injunction.

Regarding the last element (*i.e.,* the second prong) in the test for a permanent injunction—that an injunction is necessary to avoid an injury that cannot be compensated by damages, or, in other words, the inadequacy of a remedy at law requirement—the City intermingles legal concepts that are either related to this requisite or serve as a bar to a permanent injunction even if all three requisites have been fulfilled. In these respects, the City focuses on Appellant's guilty plea, asserting that "his admitted firearms violations preclude him from owning or possessing those weapons, and thereby eliminate any likelihood of injury" and, further, "constitute unclean hands foreclosing [the] entry of equitable relief in his favor." (City's Br. at 18.)

More specifically, the City contends that, in order to obtain a permanent injunction, Appellant must show that "actual and substantial injury is likely in the future," and "Appellant asserts no injury whatsoever that is reasonably certain of occurring," because "his conviction for carrying a firearm on the City's streets bars [him] from possessing a handgun"—in other words, Appellant will have no lawfully-possessed firearm to report lost or stolen under Section 10-838a. *Id.* at 19 (internal citation omitted). Somewhat relatedly, the City contends that "an injunction issues to address future, not past, conduct," and Appellant cannot claim "that the current complaint for his *prior* violation of [Section 10-838a] constitutes sufficient 'injury' to support an injunction, based solely on [his] contention that [Section 10-838a] is unlawful." *Id.* at 20 (emphasis in original). According to the City, Appellant has an

17

adequate remedy at law because "preemption provides him with a defense to the City's complaint" and, thus, the "adequacy of Appellant's statutory remedy to seek dismissal of the complaint means that the courts are without power to . . . impose injunctive relief." *Id.* at 21 (internal citation omitted).

> With respect to the unclean hands doctrine, the City posits:

> The unclean hands doctrine applies precisely in situations where, like here, a litigant violates a statute or municipal ordinance and then seeks to enjoin enforcement of that ordinance [he/she] violated.

> . . . .

> Even apart from [Appellant's] violation of [Section 10-838a], he violated the Commonwealth's firearms and public safety laws, then lied about those violations to the police, with respect to the very guns at issue in this case—quintessential "willful misconduct." And while he now attempts to paint a picture of himself as a mere "victim," he in fact callously flouted state and federal law, placing guns in the hands of dangerous criminals.

*Id.* at 22-24 (internal citations omitted).

On the other hand, Appellant in his principal brief, and later in his reply brief, emphasizes that Section 10-838a is obviously preempted by Section 6120(a), and the City was aware of this fact at least since 2008 when this Court issued *Clarke*. In addition, Appellant notes that the City "is *currently* prosecuting [him]," "seeks to fine him $2,000.00, he could be subjected to 90 days in jail, and there is no ability for him to obtain damages for this frivolous prosecution." (Appellant's Br. at 33.) Appellant further argues that it is possible that he may sustain future injury, because "there is no guarantee that he will remain prohibited [from owning a firearm], as there are numerous ways to obtain relief from a firearms disability, *e.g.,* expungement, pardon, civil rights restoration, or relief under [Section 6105(d) of the UFA], 18 Pa.C.S. §6105(d),"

18

including the reinstatement of firearm rights and privileges after the lapse of a 10-year period and upon the occurrence of certain conditions. (Appellant's Br. at 33.) Seemingly, Appellant also suggests that, given the focus on his prior behavior and admissions in the guilty plea colloquy by the City in this matter, it is quite possible that the City will pursue additional counts, claiming more violations of Section 10-838a, and will institute future actions if a permanent injunction is not granted. On the issue of unclean hands, Appellant submits:

> [T]he [City] contends in its [c]omplaint that [Appellant] violated its lost and stolen [firearm] ordinance and [Appellant] has never been prosecuted, prior to [the City's] initiation of the underlying matter, for failure to report a lost or stolen firearm[.] [I]t is curious how someone can have unclean hands for such activity, unless, either, in violation of due process, [Appellant] can be determined to have violated [Section 10-838a] before trial or he is being denied his constitutional right to a fair, impartial arbiter and trial. Moreover, as [the City] contend[s] that [Appellant] *gave* the guns to other individuals, not that he lost them or that they were stolen from him, even [it] admit[s] that [Appellant] does not have unclean hands as it relates to the failure to report the loss or theft of firearms. Furthermore, as [the City's] [c]omplaint does not seek enforcement of [its] straw purchaser ordinances, [Philadelphia Code §§]10-831 or 10 831a—nor could it, since they were enjoined by this Court in [*City of Philadelphia*, *see supra* notes 7-8]—it is also improper for the trial court to have considered non-related conduct as a basis for the unclean hands doctrine.

(Appellant's Reply Br. at 15-16 n.5) (emphasis in original).

In general, to obtain a permanent injunction, a party must demonstrate that actual and substantial injury is likely in the future, *see Peugeot Motors of America, Inc. v. Stout*, 456 A.2d 1002, 1008 (Pa. Super. 1983), because "equity ordinarily will not enjoin an alleged harmful act where it is not reasonably certain of occurring." *Curll v. Dairymen's Cooperative Sales Association*, 132 A.2d 271, 274-75 (Pa. 1957); *accord*

19

*Troiani Brothers, Inc. v. Pennsylvania Public Utility Commission*, 412 A.2d 562, 566 (Pa. 1980). Further, "[i]t has been repeatedly stated by both the Supreme Court and this Court that equity has jurisdiction only in the absence of a full, complete, and adequate remedy at law." *St. Joe Minerals Corp. v. Goddard*, 324 A.2d 800, 802 (Pa. Cmwlth. 1974). Otherwise, it is well settled that a party "who comes into a court of equity must come with clean hands." *Lee v. Lee*, 978 A.2d 380, 387 (Pa. Super. 2009) (internal citation omitted). Importantly, though, "[a]pplication of the unclean hands doctrine is confined to willful misconduct which concerns the particular matter in litigation. It does not apply to collateral matters not directly affecting the equitable relations which exist between the parties." *Shapiro v. Shapiro*, 204 A.2d 266, 268 (Pa. 1964). Stated somewhat differently: "When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy and make its inference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant[] or the relief which he demands." *Hartman v. Cohn*, 38 A.2d 22, 25 (Pa. 1944).

As a basic proposition, an injunction may issue to enjoin a prosecution when the statute is flagrantly and patently unconstitutional, there has been bad faith or harassment in the enforcement of the statute, and it is possible that the governmental entity will continue with multiple prosecutions for the same offense. *See City of Farmington v. Stansbury*, 823 P.2d 342, 346 (N.M. Ct. App. 1991); *Babin v. City of Lancaster*, 493 A.2d 141, 145 (Pa. Cmwlth. 1985); *Plaquemines Parish Commission Council v. Perez*, 379 So.2d 1373, 1384-85 (La. 1980); *Pitchess v. Superior Court of Los Angeles County*, 2 Cal. App. 3d 644, 648 (Cal. Ct. App., 2d Dist., 1969); *see also Marcus v. Diulus*, 363 A.2d 1205, 1208 (Pa. Super. 1976); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

Here, the facts, procedural history, and legal background of this case establish that the City is attempting to enforce a law that it knew, or reasonably should have known, was unenforceable due to our 2008 decision in *Clarke*, as well as the preceding and succeeding case law from this Court. Nonetheless, the City pursued this prosecutorial action against Appellant, without making any kind of notable linguistic change to the law it seeks to enforce and was struck down as preempted in *Clarke*. Also, the City does not make any meaningful argument for a change in the current state of the case law, opting instead to essentially ignore the precedential authority of this Court as if it does not exist. Ultimately, the City's decision to proceed with prosecution under Section 10-838a, a lost and stolen reporting law, and then incredibly claim that the law is actually a "straw purchaser" law, which, in any event, has also been held to be preempted by this Court, *see supra* notes 7-8, evidences a form of bad faith and harassment on the part of the City.

Moreover, Appellant's argument that he cannot be deemed to have unclean hands on the basis that he allegedly violated Section 10-838a is well taken, and we credit it as such. If an individual can be barred from seeking equitable relief simply because it is averred (but not proven as a matter of law) that the individual violated a law, then the purported violator could never obtain injunctive relief. On another note, Appellant's prior conduct, as reflected by his admissions during the guilty plea colloquy, cannot serve as a ground upon which to determine that he possesses unclean hands because it would penalize him for conduct for which he was not charged and, more importantly, would be unrelated to the specific violation that the City asserts in its complaint. In this vein, considering the amount of attention and legal briefing that has been placed on Appellant's guilty plea and the conduct described therein, it is very well within the realm of theoretical possibility that the City could/would seek to

prosecute Appellant for five other violations of Section 10-838a, potentially under the enhanced penalty regime that is set forth in the law for repeat offenders. *See supra* note 1.

Therefore, for all these reasons, we conclude that Appellant is entitled to a permanent injunction and that the trial court erred in determining to the contrary.

## Intervention and Admission of Evidence

Due to our disposition, we need not address Appellant's remaining issues relating to the propriety of the trial court's order granting Intervenors' petition for intervention and allowing testimonial and documentary evidence at the hearing on the permanent injunction.

## Conclusion

For the above-stated reasons, we reverse the trial court's order and remand with instructions that the trial court enter a permanent injunction in favor of Appellant.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Wallace did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                    :  No. 1204 C.D. 2020

v.                      :
                                    :

Rashad T. Armstrong,     :
             Appellant   :

## ***ORDER***

AND NOW, this 14th day of February, 2022, the November 12, 2020 order of the Court of Common Pleas of Philadelphia County (trial court) is hereby REVERSED and the case is remanded to the trial court with direction to enter an order granting a permanent injunction in favor of Rashad T. Armstrong in accordance with the accompanying opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
          v.                            :    No. 1204 C.D. 2020
                                        :    ARGUED:  November 15, 2021
Rashad T. Armstrong,                    :
               Appellant                :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**CONCURRING OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED:  February 14, 2022**

If we were not bound by controlling precedent, aptly set out by the Majority, I would affirm the trial court.  It seems to me that the overwhelming blight of gun violence occurring in the City of Philadelphia, of which I believe we can take judicial notice, and the policy issues argued by the City in the case before us, call for a recognition that local conditions may well justify more severe restrictions than are necessary statewide.  It is neither just to impose unnecessarily harsh limits in communities where they are not required nor consistent with simple humanity to deny basic safety regulations to citizens who desperately need them.  When a child cannot leave his home to walk to the corner of his street without risking the prospect of being caught in a crossfire, we are denying him the most fundamental right, that of life and liberty, and so I would urge our Supreme Court to reconsider the breadth of the *Ortiz* doctrine[1] and allow for local restrictions narrowly tailored to local necessities.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

_____
[1] *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996).