IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurence Joseph Anderson, Scott          :
Miller, Robert Reinhold Opdyke           :
and Michael A. Whitehouse                :      No. 1753 C.D. 2019
                                         :
            v.                           :
                                         :      Argued: October 14, 2020
City of Pittsburgh, William Peduto, in   :
his official capacity as Mayor of the    :
City of Pittsburgh, and Pittsburgh       :
City Council,                            :
                    Appellants           :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge[1]
            HONORABLE RENÉE COHN JUBELIRER, Judge[2]
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: May 27, 2022


        The City of Pittsburgh, William Peduto, in his official capacity as Mayor

of the City of Pittsburgh, and the Pittsburgh City Council (collectively, the City) appeal

---

[1] This matter was assigned to the panel before January 4, 2021, when President Judge Leavitt's term expired and before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

from the October 29, 2019 order of the Court of Common Pleas of Allegheny County (trial court), which granted summary judgment in favor of four individual plaintiffs—Laurence Joseph Anderson, Scott Miller, Robert Reinhold Opdyke, and Michael A. Whitehouse (collectively, Anderson).

## Background

On April 9, 2019, the City enacted ordinances, that, *inter alia*, prohibit the "use" of "Assault Weapons" (AW Ordinance)[3] and "Large Capacity Magazines" (LCM

---

[3] City of Pittsburgh, Pa., Ordinances (2018) (Ordinance). Ordinance 2018-1218. Pertinent here, section 1102.2(A)-(C) of the AW Ordinance states, in relevant part, as follows:

> A. It shall be unlawful to use any Assault Weapon in any public place within the City of Pittsburgh.
> B. For purposes of this Section, "public place" shall include streets, parks, open spaces, public buildings, public accommodations, businesses and other locations to which the general public has a right to resort, but does not include a private home or residence or any duly established site for the sale or transfer of Firearms or for Firearm training, practice or competition.
> C. For purposes of this Section, "use" of an Assault Weapon does not include possession, ownership, transportation or transfer. "Use" of an Assault Weapon shall include, but is not limited to:
>
> > 1. Discharging or attempting to discharge an Assault Weapon;
> > 2. Loading an Assault Weapon with Ammunition;
> > 3. Brandishing an Assault Weapon;
> > 4. Displaying a loaded Assault Weapon;
> > 5. Pointing an Assault Weapon at any person; and
> > 6. Employing an Assault Weapon for any purpose prohibited by the laws of Pennsylvania or of the United States.

Ordinance 2018-1218 §1102.2(A)-(C). An "assault weapon" is defined in section 1102.1 of the AW Ordinance and includes an enumerated list of semi-automatic firearms, semi-automatic firearms that incorporate a designated accessory feature, and semi-automatic firearms that have the ability to accept
**(Footnote continued on next page…)**

Ordinance)[4] within certain "public places" of the City. On that same date, the legislative body of the City also passed, and the Mayor of the City signed, an ordinance denoted as the "Extreme Risk Ordinance" (ER Ordinance),[5] which is designed, through

a large capacity magazine, which is a device that can accept or store more than ten rounds of ammunition. Ordinance 2018-1218 §1102.1.

[4] Ordinance 2018-1219. Relevant here, section 1104.3(A)-(B) of the LCM Ordinance states as follows:

> A. It shall be unlawful to use in any public place within the City of Pittsburgh any Large Capacity Magazine.
> B. For purposes of this Section, "use" of a Large Capacity Magazine does not include possession, ownership, transportation or transfer. "Use" of a Large Capacity Magazine shall include:
>
> 1. Employing it to discharge or in attempt to discharge Ammunition by means of a Firearm;
> 2. Loading it with Ammunition;
> 3. Fitting or installing it into a Firearm;
> 4. Brandishing it with a Firearm;
> 5. Displaying it with a Firearm while loaded; and
> 6. Employing it for any purpose prohibited by the laws of Pennsylvania or of the United States.

Ordinance 2018-1219 §1104.3(A)-(B).

[5] Ordinance 2018-1220. Notable here, section 1107.04(A)-(D) of the ER Ordinance states as follows:

> A. A petition for an Extreme Risk Protection Order shall set forth facts that demonstrate the risk presented by the respondent's ability to purchase Firearms or have possession or control of Firearms, and shall describe the number, types and locations of any Firearms known or believed to be owned by the respondent or known or believed to be in the respondent's possession or control.
> B. A petition for an Extreme Risk Protection Order, at the time of the filing, shall also identify all known restraining orders, orders of protection, and pending lawsuits, complaints, petitions, or actions pending, active, or filed within one year prior to the petition for an

**(Footnote continued on next page…)**

3

the issuance of a court-approved "Extreme Risk Protection Order," to prohibit specified individuals from possessing or using a firearm because they are deemed to have dangerous propensities and pose an imminent risk of harm to others. In passing these ordinances (collectively, Ordinances), the City was well aware of section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA), 18 Pa.C.S. §6120(a),[6] and the

> Extreme Risk Protection Order involving the respondent, including, but not limited to, an order entered pursuant to 23 Pa.C.S. Ch. 61 (relating to protection from abuse).
>
> C. The Court may consider all relevant evidence, but in no case shall an order be issued under §1107.05 (relating to interim Extreme Risk Protection Order) or §1107.09 (relating to order after hearing) absent a demonstration of risk due to behaviors or events occurring in the preceding 24 months.
>
> D. In determining whether grounds exist to issue an Extreme Risk Protection Order, the Court shall consider evidence of the following factors and the recency of any behaviors or events:
>
>> 1. Suicide threats or attempts.
>> 2. Threats or acts of violence or attempted acts of violence.
>> 3. Domestic abuse, including any violation of a protection from abuse order, under 23 Pa.C.S. Ch. 61 (relating to protection from abuse) or a similar law in another state.
>> 4. Cruelty to animals under 18 Pa.C.S. Ch. 55 Subch. B (relating to cruelty to animals) or a similar law in another state.
>> 5. Abuse of controlled substances or alcohol, or any criminal offense that involves controlled substances or alcohol.
>> 6. Unlawful or reckless use, display or brandishing of a Firearm.
>> 7. Recent acquisition or attempted acquisition of a Firearm.
>> 8. The possession, use or control of a Firearm as a part of the respondent's employment.
>> 9. Any additional information the Court finds to be reliable, including a statement by the respondent.

Ordinance 2018-1220 §1107.04(A)-(D).

[6] Act of October 18, 1974, P.L. 768.

abundance of case law from the Courts of this Commonwealth interpreting the expansive preemptive scope of this statutory provision. Section 6120 of the UFA is titled, "Limitation on the regulation of firearms and ammunition," and subsection (a) pronounces a relatively straightforward command: "No county, municipality or township may *in any manner* regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. §6120(a) (emphasis added).

The City anticipated that there would be a legal challenge to the Ordinances, and it was correct in its predicative assessment. (Br. for the City at 1.) On the same day that the Ordinances obtained the status of law, Anderson filed a complaint against the City, requesting a declaration that the LCM Ordinance was unlawful under section 6120(a) of the UFA and seeking an injunction barring its enforcement. On October 29, 2019, the trial court granted summary judgment in favor of Anderson, concluding that the LCM Ordinance was void and unenforceable because it was preempted by section 6120(a) of the UFA.

## Discussion

In its appeal to this Court, the City asserts that the trial court erred in granting summary judgment in favor of Anderson and enjoining enforcement of the LCM Ordinance on preemption grounds. The City contends that the language of the LCM Ordinance falls outside of the preemptive reach of section 6120(a) of the UFA. The City also contends that section 3 of the Second Class City Code, 53 P.S. §23131,[7]

---

[7] Act of March 7, 1901, P.L. 20, *as amended*. In full, section 3 of the Second Class City Code, provides as follows:
**(Footnote continued on next page…)**

and section 1 of the Act of May 10, 1921, P.L. 430, 53 P.S. §3703 (section 3703 of the Act),[8] provides it with express authority to pass the LCM Ordinance.

However, in the companion case, *Firearm Owners Against Crime v. City of Pittsburgh*, __ A.3d __ (Pa. Cmwlth., No. 1754 C.D. 2019, filed May 27, 2022), which was docketed and issued simultaneously with this case, this Court concluded that the LCM Ordinance was nullified by the preemptive force of section 6120(a) of the UFA and, therefore, is unenforceable. __ A.3d at __, slip op. at 26 (holding that "the primary operative provisions of . . . the LCM Ordinance . . . are preempted by section 6120(a) of the UFA"); *accord id.*, __ A.3d at __, slip op. at 27 n.17 ("[W]e

---

*To prevent and restrain riots, disturbances, etc.*

To prevent and restrain riots, routs, noises, disturbances or disorderly assemblies, in any street, house or place in the city; to regulate, prevent and punish the discharge of firearms, rockets, powder, fireworks, or any other dangerous, combustible material, in the streets, lots, grounds, alleys, or in the vicinity of any buildings; to prevent and punish the carrying of concealed deadly weapons.

53 P.S. §23131.

[8] Reproduced in its entirety, section 3703 of the Act, states as follows:

*Regulation or prohibition of sale or use of fireworks and firecrackers and discharge of firearms*

The cities of this Commonwealth be, and they are hereby, authorized to regulate or to prohibit and prevent the sale and use of fireworks, firecrackers, sparklers, and other pyrotechnics in such cities, and the unnecessary firing and discharge of firearms in or into the highways and other public places thereof, and to pass all necessary ordinances regulating or forbidding the same and prescribing penalties for their violation.

53 P.S. §3703.

conclude that [] the LCM Ordinance [is] invalid in [its] entirety.").  In so determining, we noted that "the AW Ordinance and the LCM Ordinance are virtually identical in substance to the ordinances that were struck down in [*Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), *Clarke v. House of Representatives*, 957 A.2d 361 (Pa. Cmwlth. 2008), and *National Rifle Association v. City of Philadelphia*, 977 A.2d 78, 82 (Pa. Cmwlth. 2009) (*en banc*)],"[9] and explained "that the preemptive reach of section 6120(a) goes well beyond the mere possession or carrying of a firearm." *Firearm Owners Against Crime*, __ A.3d at __, slip op. at 18-19.  With regard to section 3 of the Second Class City Code and section 3703 of the Act, we noted "that section 3 of the Second Class City Code was enacted in 1901," "section 3703 of the Act was enacted in 1921," and "the General Assembly enacted section 6120 of the UFA in 1974 and has amended it on quite a few occasions, most notably in 1998 and 2014." *Firearm Owners Against Crime*, __ A.3d at __, slip op. at 23-24.  On these grounds, this Court concluded that, pursuant to section 1971(b) of the Statutory Construction Act,[10] section 6120(a) of the UFA "must be construed to repeal both section 3 of the Second Class City Code and section 3703 of the Act," "because section 6120 of the UFA is a general statute that establishes a uniform system of gun regulation. . . ." *Firearm Owners Against*

---

[9] *City of Philadelphia* was overruled on other grounds by *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 511-13 (Pa. Cmwlth. 2019) (*en banc*) ("*FOAC*"), *affirmed*, 261 A.3d 467 (Pa. 2020).

[10] This section states as follows:

> (b) *Uniform mandatory system covering class of subjects.* — Whenever a general statute purports to establish a uniform and mandatory system covering a class of subjects, such statute shall be construed to supply and therefore to repeal pre[]existing local or special statutes on the same class of subjects.

1 Pa.C.S. §1971(b).

*Crime*, __ A.3d at __, slip op. at 24. We further concluded that "even if the General Assembly affirmatively granted authority to municipalities to pass ordinances regarding the 'discharge' of firearms in public, per section 3 of the Second Class City Code and section 3703 of the Act, such authority cannot be squared with the General Assembly's infliction of a preemptive force that deprives municipalities of that very authority." *Firearm Owners Against Crime*, __ A.3d at __, slip op. at 24. More specifically, we held that under section 1933 of the SCA,[11] "to the extent there could be a perceived irreconcilable conflict between section 3 of the Second Class City Code and section 3703 of the Act (specific statutes) viz-a-viz section 6120(a) of the UFA (a general statute), section 6120(a) of the UFA would prevail as the statute enacted later in time." *Firearm Owners Against Crime*, __ A.3d at __, slip op. at 25. Ultimately, in *Firearm Owners Against Crime*, because section 6120(a) of the UFA preempted the LCM Ordinance, we struck down the ordinance in its entirety.[12]

---

[11] This statutory section states as follows:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. §1933.

[12] As in *Firearm Owners Against Crime*, the Concurring and Dissenting Opinion agrees that *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), and the plethora of case law it has generated, constitutes controlling authority in this matter and compels the conclusion that the Ordinances are preempted. *See Anderson v. City of Pittsburgh* (Pa. Cmwlth., No. 1753 C.D. 2019, filed May 27, 2022) (unreported) (Ceisler, J., concurring and dissenting) (CDO), slip op. at 2-3. To the extent the CDO asserts that the trial court erred in granting relief that was overly broad, *i.e.*, striking down the **(Footnote continued on next page…)**

Accordingly, for the reasons more fully set forth in *Firearm Owners Against Crime*, we reach the same conclusion here and affirm the trial court's order granting summary judgment in favor of Anderson because the LCM Ordinance was preempted by—and invalid under—section 6120(a) of the UFA.

As a final matter, as we stated in *Firearm Owners Against Crime v. City of Pittsburgh*, __ A.3d __ (Pa. Cmwlth., No. 1754 C.D. 2019, filed May 27, 2022):

> [T]he precious lives lost to senseless violence in our nation is beyond tragic. The systemic issues and divisiveness in this once united nation are painfully apparent. The pressing need for peaceful public discourse with respect for our "inalienable rights to Life, Liberty and the pursuit of Happiness" is imperative, *The United States Declaration of Independence* (1776), for "[a] house divided against itself cannot stand." Abraham Lincoln's *House Divided Speech* (June 17, 1858).

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cohn Jubelirer concurs in the result only.

---

LCM Ordinance in its entirety, the CDO effectively admits that such an error is harmless, because the majority in *Firearm Owners Against Crime* enjoined enforcement of the LCM Ordinance in its entirety. *See id.*, slip op. at 5 n.3.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurence Joseph Anderson, Scott   :
Miller, Robert Reinhold Opdyke   :
and Michael A. Whitehouse   :    No. 1753 C.D. 2019
  :
           v.   :
  :
City of Pittsburgh, William Peduto, in   :
his official capacity as Mayor of the   :
City of Pittsburgh, and Pittsburgh   :
City Council,   :
           Appellants   :

## ***ORDER***

AND NOW, this 27th day of May, 2022, the October 29, 2019 order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurence Joseph Anderson, Scott   :
Miller, Robert Reinhold Opdyke,   :
and Michael A. Whitehouse   :
   :
     v.    :  No. 1753 C.D. 2019
   :  Argued: October 14, 2020
City of Pittsburgh, William Peduto, in :
his official capacity as Mayor of the   :
City of Pittsburgh, and Pittsburgh   :
City Council,   :
           Appellants   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
         HONORABLE RENÉE COHN JUBELIRER, Judge
         HONORABLE PATRICIA A. McCULLOUGH, Judge
         HONORABLE ANNE E. COVEY, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE CHRISTINE FIZZANO CANNON, Judge
         HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER                   FILED: May 27, 2022

Though I am constrained to concur in part with the majority in this matter, due to the current state of preemption law in Pennsylvania regarding the field of firearms regulation, I am equally compelled to ultimately disagree with the majority's outcome in this matter. Accordingly, I dissent in part, because I believe that the scope of such preemption has been defined by our courts in an unjustifiably broad manner and, in addition, that the Court of Common Pleas of Allegheny County's (Common Pleas) grant of summary judgment in favor of Appellees Laurence Joseph Anderson, Scott Miller, Robert Reinhold Opdyke, and Michael A. Whitehouse (collectively Appellees) improperly went beyond the scope of the challenge posed by Appellees, as well as that of the relief which they had sought.

The genesis of this case occurred on April 9, 2019, when Appellant City of Pittsburgh (City) enacted a series of ordinances, including Ordinance 2018-1219 (Magazine Ordinance), which bars the use of armor penetrating ammunition, large capacity magazines, and rapid fire devices within the City's limits. City of Pittsburgh, Pa. Ordinances (2019), Magazine Ordinance §§ 1104.02-1104.04. The Magazine Ordinance also contains a dormant ban on ownership, possession, transfer, and transportation of large capacity magazines, one which will snap into place as enforceable law only in the event "action of the Pennsylvania General Assembly or the Pennsylvania Supreme Court that has the effect of authorizing the [dormant ban's] implementation and enforcement[.]" *Id.* §§ 1105.02, 1105.07.

Appellees responded by filing their Complaint for Declaratory and Injunctive Relief (Complaint), through which they challenged the large capacity magazine usage ban, but did not challenge the remainder of the Magazine Ordinance. *See* Reproduced Record (R.R.) at 5a-21a.[1] In doing so, Appellees sought a declaratory judgment that the large capacity magazine usage ban was preempted by state law, as well as an injunction permanently barring the City from enforcing that ban. *Id.* at 20a-21a. Appellees then reiterated this request in their subsequent Motion for Summary Judgment. *See id.* at 128a-29a, 148a-58a. Thereafter, Common Pleas granted summary judgment in Appellees' favor and, in doing so, awarded relief to Appellees that both preempted and enjoined the Magazine Ordinance in full. *See id.* at 299a-304a.

That decision by Common Pleas leads me to two conclusions. First, as I explained in my concurring and dissenting opinion in *Firearm Owners Against Crime v. City of Pittsburgh*, __ A.3d __ (Pa. Cmwlth., No. 1754 C.D. 2019, filed

---

[1] Appellees characterized this ban as a prohibition against "carrying loaded standard capacity magazines in public[.]" *See* R.R. at 14a, 16a-21a.

May 27, 2022) (*FOAC*), the companion case to this matter, our Supreme Court's decision in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), as well as the subsequent case law that has sprung forth as a result of that ruling, effectively forecloses on preemption grounds local regulation of ammunition, ammunition components, and firearms. *FOAC*, __ A.3d at __, slip op. at 2-7 (Ceisler, J., concurring in part and dissenting in part). Therefore, on this same basis, I reluctantly agree with the majority in this matter that Common Pleas did not erroneously grant summary judgment in favor of Appellees, insofar as Common Pleas deemed the Magazine Ordinance's large capacity magazine usage ban preempted under state law and permanently enjoined its enforcement.

I, however, reiterate my call for our Supreme Court

> to either overturn or rein in the reach of *Ortiz*[, because] the scope of [the relevant] preemption statutes . . . is more limited than understood through our extant corpus of case law. Specifically, they collectively preempt local regulation of ownership, possession, transfer, and transportation of three classes of items, *i.e.*, firearms, ammunition, and ammunition components, but extend no further than that.

*Id.* at __, slip op. at 7.

Second, I take great issue with the majority's wholesale affirmation of Common Pleas' decision, because that ruling violated a basic tenet of hornbook law: a court *cannot* grant a party relief beyond that which was specifically requested or "is agreeable to the case made in the [complaint.]" *See Meth v. Meth*, 62 A.2d 848, 849 (Pa. 1949) (citations omitted). As explained by our Supreme Court more than a century ago:

> The relief afforded by a decree in equity must conform to the case as made out by the pleadings as well as to the proofs. Every fact essential to entitle a plaintiff to the relief which he seeks must be averred in his [complaint]. Neither

unproved allegations nor proof of matters not alleged can be made a basis for equitable relief. Relief cannot be granted for matters not alleged. . . . Neither allegations without proof nor proof without allegations, nor allegations and proof which do not substantially correspond, will entitle complainant to relief unless the defect be remedied by amendment. . . . A complainant can be afforded such relief only as he is entitled to under the allegations of the [complaint]. . . . The order or decree of a court of chancery[2] should conform to the prayer in the [complaint]. . . . Every averment necessary to entitle a plaintiff in equity to the relief sought must be contained in the stating part of the [complaint]. . . . Authorities need not be multiplied in support of the rule that the relief afforded by the decree must conform to the case as made out by the pleadings, and the decree must be consistent with the relief prayed for.

*Luther v. Luther*, 64 A. 868, 870 (Pa. 1906) (internal citations omitted). In this instance, and despite the limited scope of Appellees' legal challenge and the relief they had requested, Common Pleas inexplicably granted summary judgment in a manner that both deemed preempted and consequently enjoined the *entirety* of the Magazine Ordinance.

What averment in [Appellees' Complaint] supports this decree? In answer to what prayer was it made? Proceedings in equity may be elastic, but there is a limit to their elasticity. They are not to be stretched to give relief from a specific wrong not averred in a . . . complaint, or to make a decree not in conformity to its prayers. This is just what was done in the case before us, and it was done in plain disregard of a rule of equity procedure laid down in

---

[2] "[T]he term 'chancery powers,' [encompasses] 'the jurisdiction, powers, practice and procedure in equity.'" *Penn Anthracite Mining Co. v. Anthracite Miners of Pa.*, 178 A. 291, 294 (Pa. 1935) (quoting *Morgan v. Reel*, 62 A. 253, 254 (Pa. 1905)). "For historical reasons having to do with our colonists' distrust of the English Chancery Courts, Pennsylvania maintains a unified court system whereby common pleas court judges also act as judges in equity but with only those equity powers and jurisdiction specifically granted by law." *Goodwin v. Rodriguez*, 554 A.2d 6, 8 (Pa. 1989).

> all the text-books and repeated time and again in chancery reports.

*Spangler Brewing Co. v. McHenry*, 89 A. 665, 666 (Pa. 1914). Accordingly, I dissent in part, due to the majority's decision to compound and sanction this error.[3]

_____
ELLEN CEISLER, Judge

Judge Wojcik joins in this Concurring and Dissenting opinion.

---

[3] I recognize that the Magazine Ordinance was challenged, declared preempted, and enjoined, in full in *FOAC*. *See FOAC*, __ A.3d at __, slip op. at 7-8. However, that does not mean that it was appropriate for Common Pleas to award the aforementioned blanket relief or for our Court to affirm that broad grant in *this* case.